UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| REVEREND PATRICK J. MAHONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2314 (JEB) |
| | ) | |
| UNITED STATES CAPITOL | ) | |
| POLICE BOARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:   December 10, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.    THE CAPITOL POLICE BOARD'S REGULATIONS REGARDING
      DEMONSTRATIONS ON THE UNITED STATES CAPITOL GROUNDS ................ 2

      A.    Applicable Regulations Regarding Demonstration Activity on the U.S.
            Capitol Grounds. ............................................................................................ 2

      B.    The Board's Orders Regarding Areas for Demonstration Activity ........................... 4

II.   ALLEGATIONS IN THE AMENDED COMPLAINT .................................................... 5

III.  PROCEDURAL HISTORY ........................................................................................ 5

ARGUMENT ................................................................................................................. 6

I.    PLAINTIFF'S CONSTITUTIONAL CLAIMS FOR DAMAGES SHOULD
      BE DISMISSED. ...................................................................................................... 6

II.   PLAINTIFF'S FIRST AMENDMENT CLAIMS SHOULD BE DISMISSED ................ 7

      A.    The Traffic Regulations Are Not Facially Unconstitutional. .................................... 7

            1.    The Regulations Do Not Confer Officials with Unfettered Discretion. ........... 8

            2.    The Regulations Are Not Facially Overbroad ................................................ 9

      B.    The Traffic Regulations Are Content-Neutral, Narrowly Tailored
            Restrictions That Allow for Alternative Channels of Communication. ................. 10

            1.    The Regulations Are Content-Neutral. .......................................................... 11

            2.    The Regulations Are Narrowly Tailored to Serve a Significant
                  Government Interest .................................................................................. 12

            3.    The Regulations Leave Open Ample Alternative Channels of
                  Communication. ....................................................................................... 13

      C.    The Traffic Regulations Do Not Substantially Burden Plaintiff's Right to
            Practice His Religion. ...................................................................................... 15

III.  PLAINTIFF HAS NOT STATED A DUE PROCESS CLAIM UPON WHICH
      RELIEF CAN BE GRANTED. .................................................................................. 17

IV.   PLAINTIFF'S EQUAL PROTECTION CLAIM IS MERITLESS. ................................ 19

CONCLUSION .............................................................................................................. 22

## TABLE OF AUTHORITES

**Cases**                                                                      **Page(s)**

*Alves v. United States*,
    133 F.3d 1454 (Fed. Cir. 1998) ........................................... 17

*Ams. for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021) ....................................................... 9

*Brandon v. D.C. Bd. of Parole*,
    823 F.2d 644 (D.C. Cir. 1987) ........................................... 19

*Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*,
    561 U.S. 661 (2010) ........................................................... 15

*Cleburne v. Cleburne Living Ctr., Inc.*,
    473 U.S. 432 (1985) ........................................................... 19

*Conti v. United States*,
    291 F.3d 1334 (Fed. Cir. 2002) ......................................... 17

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985) ........................................................... 10

*Edwards v. District of Columbia*,
    755 F.3d 996 (D.C. Cir. 2014) ........................................... 9

*FDIC v. Meyer*,
    510 U.S. 471–86 (1994) .................................................... 7

*Frederick Douglass Foundation, Inc. v. District of Columbia*,
    531 F. Supp. 3d 316 (D.D.C. 2021) ................................... 10, 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ........................................................... 16

*Holt v. Hobbs*,
    135 S. Ct. 853 (2015) ......................................................... 16

*Kaemmerling v. Lappin*,
    553 F.3d 669 (D.C. Cir. 2008) ........................................... 16

*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011) ........................................... 7

*Kroll v. U.S. Capitol Police*,
    847 F.2d 899 (D.C. Cir. 1988).......................................... 20

*Levitan v. Ashcroft*,
    281 F.3d 1313 (D.C. Cir. 2002) ......................................... 15

*Mahoney v. Doe*,
    642 F.3d 1112 (D.C. Cir. 2011) ......................................... 10

*Mahoney v. U.S. Marshals Serv.*,
    454 F. Supp. 2d 21 (D.D.C. 2006) ................................................. 12

*NB ex rel. Peacock v. District of Columbia*,
    794 F.3d 31 (D.C. Cir. 2015) ..................................................... 17

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983) .............................................................. 11

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015) ............................................................ 11

*Renton v. Playtime Theatres, Inc.*,
    475 U.S. 41 (1986) .............................................................. 11

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ............................................................ 15

*Smith v. Harvey*,
    541 F. Supp. 2d 8 (D.D.C. 2008) .................................................. 18

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 566 (2011) ............................................................ 11

*Taylor v. FDIC*,
    132 F.3d 753 (D.C. Cir. 1997) ................................................... 7

*United States v. Barnes*,
    295 F.3d 1354 (D.C. Cir. 2002) .................................................. 18

*United States v. Fuller*,
    409 U.S. 488 (1973) ............................................................ 17

*United States v. Grace*,
    461 U.S. 171 (1983) ......................................................... 10, 12

*United States v. Mahoney*,
    247 F.3d 279 (D.C. Cir. 2001) ................................................... 12

*United States v. Mitchell*,
    445 U.S. 535 (1980) ............................................................ 6

*United States v. Stevens*,
    559 U.S. 460 (2010) ............................................................ 9

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) ............................................................ 19

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ............................................................ 10

**<u>Statutes</u>**

40 U.S.C. § 5104(e)(2)(D) ................................................................................. 20

40 U.S.C. § 5104(e)(2)(F) ................................................................................. 20

40 U.S.C. § 5104(e)(2)(G) ................................................................................. 20

40 U.S.C. § 5104(e)(3) ....................................................................................... 20

42 U.S.C. §§ 2000bb *et seq.* .............................................................................. 5

42 U.S.C. § 2000bb-1 ........................................................................................ 16

42 U.S.C. § 2000bb-1(c) .................................................................................... 16

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(b)(6) ................................................ 1, 2, 7, 17, 22

**Other**

U.S. Const. amend. V ........................................................................................ 17

Defendants United States Capitol Police Board (the "Capitol Police Board" or the "Board"), and others,[1] respectfully submit this Memorandum of Law in support of Defendants' motion to dismiss the claims set forth in the First Amended Verified Complaint (the "Complaint"), filed by Plaintiff Reverend Patrick J. Mahoney on November 4, 2021.  ECF No. 13.  The claims should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## INTRODUCTION

This case arises from the disapproval of Plaintiff's request to hold a prayer vigil for a group of at least 20 people on the West Front Lawn of the U.S. Capitol Grounds on September 11, 2021.  The reason for the denial was that locations near the Capitol Building, including the West Front Lawn, were closed to demonstrations due to security concerns.

Plaintiff held his vigil near the Capitol without a permit on September 11, 2021.  Yet, he complains that his applications were subjected to an unfair permitting regime controlled by public officials who have unfettered discretion to grant or deny permits based on whether they approve of the message to be communicated.  According to Plaintiff, the applicable regulations prohibit a significant amount of constitutionally protected activity and fail to provide adequate notice of what activity is permitted.  Plaintiff claims that the relevant regulations violate his rights under the First, Fifth, and Fourteenth Amendments as well as the Religious Freedom Restoration Act.

---

[1]     Plaintiff has sued the following individual members of the Capitol Police Board in their official capacity:  Karen H. Gibson, U.S. Senate Sergeant at Arms and Doorkeeper; William J. Walker, U.S. House of Representatives Sergeant at Arms; J. Brett Blanton, Architect of the Capitol; and J. Thomas Manger, Chief of Police, U.S. Capitol Police.  Plaintiff also sued "John Does 1-5," described as governmental representatives who were involved both in adopting the "permitting scheme" and in decisions to "grant or deny" permits.  Am. Compl. ¶ 21.

Plaintiff's contentions are meritless because his interpretation of the relevant regulations is incorrect. The regulations expressly do not regulate on the basis of any content and apply regardless of the viewpoint of the individual or group proposing to demonstrate at the U.S. Capitol Grounds. Instead, the relevant provisions merely implement a permitting process that is based on the number of demonstrators and the locations available for the requested demonstration. For this reason, the regulations are not facially invalid and, to the extent that they regulate protected speech, these rules constitute a valid time, manner, and place restriction.

For these and other reasons, Plaintiff's claims under the Free Exercise Clause, the Due Process Clause, and the Equal Protection Clause lack merit. Plaintiff was not treated differently than other similarly situated permit applicants; the examples he cites in which demonstration activity was allowed in restricted areas involved events sponsored or organized by Members of Congress, to whom the relevant regulations do not apply. And because Plaintiff acknowledges that he has been allowed to hold his prayer vigils on the West Front Lawn in the past, any suggestion that Defendants treated him differently based on his religion or message is unpersuasive.

For these reasons, as discussed in detail below, the Court should grant this motion and dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## BACKGROUND

## I.   THE CAPITOL POLICE BOARD'S REGULATIONS REGARDING DEMONSTRATIONS ON THE UNITED STATES CAPITOL GROUNDS

### A.   Applicable Regulations Regarding Demonstration Activity on the U.S. Capitol Grounds

Permits to hold demonstrations on the U.S. Capitol Grounds are governed by the Traffic Regulations for the U.S. Capitol Grounds (the "Traffic Regulations"), established by the Capitol Police Board, and the USCP's Guidelines for Conducting an Event on United States Capitol

Grounds (the "Guidelines").  The Board has designated the U.S. Capitol Police ("USCP")

Special Events Section to receive and process applications for individuals or groups to use the

Capitol Grounds for demonstrations or other organized activities.  The purpose of the Traffic

Regulations and Guidelines is to ensure public health and safety during activities, while shielding

the Congressional community from threats or violence.  Grossi Decl.[2] ¶ 6.

Chapter 12 of the Traffic Regulations governs demonstrations and special events.  The

regulations define demonstration activity as "any protest, rally, march, vigil, gathering,

assembly, projecting of images or similar conduct engaged in for the purpose of expressing

political, social, religious or other similar ideas, views or concerns protected by the First

Amendment [to] the United States Constitution."  Traffic Regulations § 12.1.10.  The regulations

further provide that "no group of twenty (20) persons or more shall engage in demonstration

activity on Capitol Grounds except pursuant to the terms of a permit issued by the Capitol Police

Board," *id.* § 12.4.10, through the Special Events Section.  A permit is not required for groups of

fewer than 20 individuals.  *See id.* § 12.3.10.  Once processed by the USCP Special Events

Section, a permit authorizes individuals or groups to use the Capitol Grounds for a specific

purpose and for a specified amount of time.  Grossi Decl. ¶ 5.

The Capitol Police Board determines which areas within the Capitol Grounds may be

temporarily restricted or permanently prohibited for public use or access.  *Id.* ¶ 7.  This

determination may be based on events or circumstances ranging from Presidential Inaugural

ceremonies to lingering threats posed by insurrectionist groups.  *Id.*  The areas in which

demonstration activity is allowed is identified on the United States Capitol Grounds

---

[2]      Citations to "Grossi Decl." refer to the Declaration of Lieutenant Scott J. Grossi, dated
September 8, 2021.  ECF No. 10-1.

Demonstration Areas Map.  *See* Traffic Regulations § 12.2.10.  The regulations prohibit any person or group of any size from engaging in demonstration activity "in any area otherwise closed or restricted for official use."  *Id.* § 12.2.20.

Traditionally, events sponsored or organized by Members of Congress are not subject to the Traffic Regulations.  *See* Grossi Decl. ¶ 20.  This exemption is consistent with 40 U.S.C. § 5104(e)(3), which exempts Members of Congress and their employees from the statutory prohibition against disorderly or disruptive conduct on the Capitol Grounds, demonstrating within Capitol Buildings, or obstructing passage on the Grounds.

### B.      The Board's Orders Regarding Areas Available for Demonstration Activity

On January 6, 2021, thousands of insurrectionists stormed the Capitol Building and Grounds significantly damaging windows, doors, and other points of entry.  On January 8, 2021, the Capitol Police Board restricted public access to certain areas within the Capitol Grounds to limit exposure and protect against threats to the damaged Capitol Building and the Congressional community.  Among those restricted areas was Area 1, which abuts the Capitol building to the west and includes the West Front Lawn.  Outer and inner perimeter fencing was installed as an additional security measure.

As of March 28, 2021, the Capitol Police Board authorized the removal of the outer perimeter fencing to permit demonstrations and other activity.  Grossi Decl. Ex. 3.  As of July 11, 2021, the Capitol Police Board authorized the removal of the inner perimeter fencing. *Id.* ¶ 13.  The areas in closest proximity to the Capitol Building, the area known as Capitol Square (Areas 1, 8, 9, 10, and 11 on the Demonstration Map) remain temporarily restricted to demonstration groups of 20 or more.  *Id.* ¶ 14.  On September 2, 2021, the Capitol Police Board opened certain areas, but confirmed that Capitol Square (Areas 1, 8, 9, 10, and 11) "shall remain closed."  *Id.* Ex. 4.

## II.    ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff, a Virginia resident, describes himself as an ordained Presbyterian minister.  Am. Compl. ¶¶ 2, 14.  In July and August 2021, he requested permission to hold a prayer vigil involving 20 people or more at the West Front Lawn[3] of the United States Capitol Grounds on September 11, 2021.  *Id.* ¶¶ 46-47.  The USCP Special Events Section did not approve that request because the West Front Lawn was a restricted area in which no demonstration activity involving 20 people or more was allowed.  *Id.* ¶ 48.  Plaintiff alleges that he intends to hold additional prayer vigils on the Capitol Grounds "in the near future," including vigils involving 20 or more people on the West Front Lawn.[4]  *Id.* ¶ 53.

## III.    PROCEDURAL HISTORY

On August 31, 2021, Plaintiff filed this civil action, alleging that Defendants violated his rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*  ECF No. 1.  At the same time, he moved for a temporary restraining order and preliminary injunction directing Defendants to allow him to hold the prayer vigil on the West Front Lawn on September 11, 2021 and seeking to enjoin Defendants from enforcing or otherwise requiring compliance with "any unreasonable prohibition on Plaintiff's engagement in First Amendment protected activities at said prayer vigil."  ECF No. 4-4.  On September 9, 2021, after a telephonic hearing, the Court denied Plaintiff's motion.

---

[3]    Although Plaintiff identifies this location as the "Western Front Lawn," Defendants will refer to it by its more commonly known name, the "West Front Lawn."

[4]    On November 22, 2021, Plaintiff applied to hold a prayer vigil involving 20 people or more in Area 10 on December 23, 2021.  Because Area 10 remains restricted to groups of that size, the Special Events Section is unable to approve the application.

On November 4, 2021, with Defendants' consent, Plaintiff filed an amended complaint. This pleading alleges that Defendants violated his First Amendment rights to freedom of speech, freedom of association and assembly, and the free exercise of religion (First, Second, and Third Causes of Action), his Fifth Amendment right to due process (Fourth Cause of Action), his Fifth and Fourteenth Amendment rights to equal protection under the law (Fifth Cause of Action), and his rights under the Religious Freedom Restoration Act (Sixth Cause of Action).  Am. Compl. at 17-26.

Plaintiff seeks a declaration that the Traffic Regulations and the permitting process are facially unconstitutional, that the Government's denial of Plaintiff's request to hold a prayer vigil on the West Front Lawn violated his rights under the Constitution and federal law, and that the "ongoing refusal" to permit Plaintiff to conduct expressive activity "on specified areas of the Capitol Grounds" is a violation of those rights.  *Id.* at 26-27.  Plaintiff further seeks an injunction requiring the Government to permit Plaintiff to conduct a prayer vigil involving more than 20 people on the West Front Lawn in the future and to prevent the Government from interfering "in any manner" with his constitutional rights.  *Id.* at 27.  Finally, Plaintiff seeks "nominal, compensatory, and punitive damages," as well as reasonable costs and attorneys' fees.  *Id.*

## ARGUMENT

### I.   PLAINTIFF'S CONSTITUTIONAL CLAIMS FOR DAMAGES SHOULD BE DISMISSED.

Plaintiff's constitutional claims should be dismissed against all the defendants because Congress has not expressly waived sovereign immunity with respect to constitutional claims for damages against them.  In the absence of an express waiver, sovereign immunity precludes suits against the United States and its agencies, *see United States v. Mitchell*, 445 U.S. 535, 538 (1980).  It is well-established that "no cause of action for damages for constitutional violations . .

. is to be implied against government agencies." *Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir.

1997); *see FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (declining to extend *Bivens* to federal

agencies).  The same is true with respect to the individual defendants who are sued in their

official capacity in this case.  *See Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011) ("It is

well established that *Bivens* remedies do not exist against officials sued in their official

capacities.").  For this reason, the First through Fifth Causes of Action for damages should be

dismissed against all the Defendants.

## II.      PLAINTIFF'S FIRST AMENDMENT CLAIMS SHOULD BE DISMISSED.

The Amended Complaint alleges that the Traffic Regulations are facially invalid and that

Defendants unlawfully applied those regulations to Plaintiff's request to hold a prayer vigil for

20 people or more at the Western Front Law on September 11, 2021.  For the following reasons,

both the facial and as-applied challenges lack merit and should be dismissed pursuant to Rule

12(b)(6).

### A.      <u>The Traffic Regulations Are Not Facially Unconstitutional</u>

The Amended Complaint asserts two theories to support the claim that the Traffic

Regulations are facially unconstitutional under the First Amendment.  Plaintiff first argues that

the regulations "afford public officials unduly broad discretion in making permit decisions" and

that it makes such decisions without "narrow, objective, and definite standards."  Am. Compl.

¶ 56.  He also argues that the regulations are facially overbroad because they "sweep within their

prohibitions a substantial amount of protected speech."  *Id.* ¶¶ 57, 68.

The Court should reject these claims because they are based on an inaccurate

interpretation of the process governing demonstration activity on the U.S. Capitol Grounds.

Plaintiff attempts to incorrectly characterize the Traffic Regulations as allowing public officials

(presumably the Board members and the USCP Special Events Section) the discretion to

arbitrarily select which demonstration activity will receive a permit based on whether those officials approve of the particular message to be expressed.  That erroneous view of the approval process is inconsistent with the Traffic Regulations, which are content-neutral and examine only whether a particular location is available for demonstration activity given the size of the proposed group.

        1.    *The Regulations Do Not Confer Officials with Unfettered Discretion.*

Plaintiff first argues that the regulations give public officials too much discretion in determining whether to grant or deny a request for a permit.  But his pleading fails to identify what language in the regulations purportedly confers any such "unbridled" or "unfettered" discretion.  A review of the relevant provisions demonstrates that the government has little, if any, discretion because demonstration activity is either allowed or disallowed based on objective criteria.  If an individual or group fewer than 20 people propose to engage in demonstration activity, they may do so without a permit in an area designed as permissible on the United States Capitol Grounds Demonstration Areas Map.  Traffic Regulations §§ 12.2.10, 12.3.10.  If a group with more than 20 people wishes to demonstrate, it must submit a permit application.  Those requests will be approved unless the Board temporarily has ordered a particular area closed for groups of more than 20 people due to security concerns.

Accordingly, the Special Events Section's decision-making is confined to determinations of how large the group of demonstrators will be and where the proposed activity will take place.  Those are objective facts that do not allow for "unbridled" discretion.  There is no basis for Plaintiff's argument that the regulations confer limitless discretion on government officials to pick and choose, based on the proposed content of the demonstration, which permits are granted and which permits are denied.

## 2. *The Regulations Are Not Facially Overbroad*

Similarly meritless is Plaintiff's argument that Chapter 12 of the Traffic Regulations is facially overbroad because it prohibits "a substantial amount of protected speech."  Am. Compl. ¶ 57.  The Court should reject this erroneous contention.

The Supreme Court has recognized that, in the First Amendment context, a party may assert a facial challenge "whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted)); *see also Edwards v. District of Columbia*, 755 F.3d 996 (D.C. Cir. 2014).  Here, Plaintiff has not come close to meeting this standard.

The Traffic Regulations do not prohibit any protected speech.  Traffic Regulations § 12.1.20 ("The provisions of this chapter shall apply equally to all demonstrators, regardless of viewpoint.").  There is thus no basis for Plaintiff's unsupported argument that the regulations are facially overbroad because they prohibit too much protected speech.  Notably, Plaintiff supports his speculative contention with no facts establishing that Defendants are prohibiting protected speech.  Rather, as discussed in detail below, the Traffic Regulations limit the *locations* at which large groups may engage in protected speech based on legitimate governmental concerns for security and public safety.

For these reasons, Plaintiff has not alleged a viable argument that the Traffic Regulations are unconstitutionally overbroad because they prohibit a substantial amount of protected expression.

9

**B.     The Traffic Regulations Are Content-Neutral, Narrowly Tailored
         <u>Restrictions That Allow for Alternative Channels of Communication.</u>**

Plaintiff's as-applied challenge fares no better for many of the same reasons why the

facial challenges fail.  Specifically, Plaintiff incorrectly has interpreted the Traffic Regulations as

curtailing protected speech or allowing public officials to base permitting decisions on the

content of the message to be communicated.  There is simply no basis to read the regulations in

such a fashion.

Earlier this year, this Court recognized that a prior case brought by Plaintiff provides the

applicable framework for an as-applied challenge under the First Amendment.  *Frederick*

*Douglass Found., Inc. v. District of Columbia*, 531 F. Supp. 3d 316, 329 (D.D.C. 2021) (citing

*Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011)).  Under *Mahoney*, courts undertake a three-

step analysis: "[F]irst, determining whether the First Amendment protects the speech at issue,

then identifying the nature of the forum, and finally assessing whether the District's justifications

for restricting [Plaintiffs'] speech 'satisfy the requisite standard.'"  642 F.3d at 1116 (quoting

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

For purposes of this motion, Defendants do not dispute that the First Amendment applies

to the prayer vigil that Plaintiff proposed for September 11, 2021, and that the West Front Lawn

has been found to be a traditional public forum.  However, Plaintiff's claims fail because the

regulations concerning demonstration activity on the Capitol Grounds constitute a "time, place,

and manner" restriction that is consistent with the law of this Circuit.  *See Ward v. Rock Against*

*Racism*, 491 U.S. 781, 8791 (1989).  The government may restrict expressive conduct in a public

forum "provided the restrictions 'are content-neutral, narrowly tailored to serve a significant

government interest, and leave open ample alternative channels of communication.'"  *Mahoney*,

642 F.3d at 1117 (citing *United States v. Grace*, 461 U.S. 171, 177 (1983) (quoting, in turn,

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).  Here, the Traffic

Regulations' provisions concerning demonstration activity plainly satisfy these three elements.

### 1.   *The Regulations Are Content-Neutral.*

A review of Chapter 12 of the Traffic Regulations, Am. Compl. Ex. A, demonstrates that

they are content-neutral.  "Government regulation of speech is content based if a law applies to

particular speech because of the topic discussed or the idea or message expressed."  *Reed v.*

*Town of Gilbert*, 576 U.S. 155, 163 (2015).  To determine whether a regulation of speech is

content based, a court must "consider whether a regulation of speech 'on its face' draws

distinctions based on the message a speaker conveys."  *Id.* (quoting *Sorrell v. IMS Health, Inc.*,

564 U.S. 566 (2011)); *see also Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)

(explaining that "'content-neutral' speech regulations" are "those that are justified without

reference to the content of the regulated speech" (internal quotation marks omitted)).

There can be no serious dispute that the Traffic Regulations do not regulate expression

based on religious or political views, or other message that a demonstrator might wish to convey.

Tellingly, the Amended Complaint does not identify any Traffic Regulation provision that is

content based.[5]  To the contrary, the regulations expressly state that the provisions regarding

demonstration activity "shall apply equally to all demonstrators, regardless of viewpoint."

Traffic Regulations § 12.1.20.  The Court should therefore conclude—as it did in denying

Plaintiff's motion for preliminary injunctive relief—that the applicable restrictions on

---

[5]      Instead, Plaintiff argues that the "Government's acts and polices are neither neutral nor of
general application" because Plaintiff's request was denied while other non-religious gatherings
were allowed.  Am. Compl. ¶ 87.  As the Court explained in *Frederick Douglass Foundation*,
selective enforcement claims are properly analyzed under the Equal Protection Clause, not the
First Amendment, 531 F. Supp. 3d at 326-28.  Because Plaintiff also has alleged an equal
protection claim, the issue of discriminatory application of the regulations will be addressed
below in that context.

demonstration activity are content-neutral because they apply to all members of the public

irrespective of the message that they might wish to communicate.

> ### 2. *The Regulations Are Narrowly Tailored to Serve a Significant Government Interest.*

 The Traffic Regulations provide that they were promulgated "in the interest of securing

public safety and for protection against personal injury or damage to property."  *See* ECF No. 14

at 3 (Preamble).  In this case, the USCP Special Events Section advised Plaintiff that his

preferred location was in Area 1, where public access had temporarily been restricted by the

Board.  The restrictions stem from the security concerns after January 6, 2021, based on ongoing

assessments of intelligence and information received from partner law enforcement agencies.

Courts in this Circuit have consistently held that the protection of the Capitol Building

and prominent government officials constitutes a significant government interest.  *See, e.g.*,

*United States v. Mahoney*, 247 F.3d 279, 286 (D.C. Cir. 2001) (stating that the government has a

significant interest in "'ensuring public safety and order'"); *Mahoney v. U.S. Marshals Serv.*, 454

F. Supp. 2d 21, 33 (D.D.C. 2006) (noting that "armed gunmen have stormed the Capitol building

more than once") (citing *Grace*, 461 U.S. at 182)).  The Amended Complaint does not allege that

the federal government lacks a significant interest in protecting the integrity of the Capitol

Building and the elected officials, staff members, and other members of the Capitol Hill

community who work in the building.

The Capitol Police Board's temporary restrictions on public access to areas near the

Capitol are narrowly tailored to the interest in security.  The restricted areas are those that are

closest to the Capitol or that otherwise could present a viable security risk to the building and its

occupants.  Importantly, USCP has removed restrictions to certain areas as threat conditions

change.  On March 28, 2021, for example, the USCP Board issued an order that reopened five

areas of the Capitol Grounds that had been closed to the public.  Grossi Decl. ¶ 12, Ex. 3.  As of

July 11, 2021, the Capitol Police Board authorized the removal of the inner perimeter fencing.

*Id.* ¶ 13, Ex. 4.  The Board has thus tailored the boundaries of the restricted areas based on the

corresponding threats to security and the available law enforcement to secure the Capitol

Grounds.  On September 2, 2021, citing "an evaluation of the current security posture," including

"upcoming demonstrations on the Capitol Grounds and in the city," the Board determined that

Areas 1, 8, 9, 10, and 11 shall remain closed to demonstrations of 20 persons or more.

Accordingly, the areas designated as restricted are directly based on the Board's security

assessments and availability of law enforcement and involve those areas closest in proximity to

the Capitol Building.

　　　　The Court should therefore conclude that Defendants' limitations on the locations where

large groups may demonstrate is narrowly tailored to the significant government interest in

security and public safety.

### 3.　*The Regulations Leave Open Ample Alternative Channels of Communication.*

　　　　A review of the Demonstration Area Map, Am. Compl. ¶ 26, demonstrates that Plaintiff

had ample alternative channels to hold his prayer vigil for 20 or more people on September 11,

2021.  Of the 23 numbered areas, large groups may not demonstrate in only five.  That left 18

areas for Plaintiff to communicate his chosen message, and some available areas (such as Areas

2, 3, 21, 12, and 15) are across the street from Capitol Square, while others also have an

appealing view of the Capitol Building (such as Areas 3, 12, 15, and 21).  Alternatively, if

Plaintiff chose to limit his vigil to 19 people or fewer, he could hold his prayer vigil in any of the 23 areas on the Capitol Grounds, including on the West Front Lawn in Area 1.[6]

Plaintiff has not explained why he is unable to hold the prayer vigil at a location that is available for demonstrations by groups of at least 20 people.  Plaintiff alleges that he "felt called by God to hold a prayer vigil . . . on the Western Front Lawn, in the shadow of the Capitol Building, where he has held similar prayer vigils in years past."[7]  Am. Compl. ¶ 45.  As noted above, there are many areas other than the Western Front Lawn that are accurately described as being "in the shadow" of the Capitol Building.  And that Plaintiff emphasizes that he was permitted to hold prayer vigils on the West Front lawn in prior years only emphasizes that the Board has been restricting the areas available for demonstrations based on its assessment of the threat to security at the relevant time.

*      *      *

For the foregoing reasons, the Traffic Regulations' restrictions on demonstration activity on the Capitol Grounds constitute a valid time, manner, and place restriction.  The content-neutral provisions are narrowly tailored to the Capitol Police Board's significant interest in the security of the Capitol Building and those inside it.  Plaintiff has ample alternative opportunities to hold a prayer vigil, either on the West Front Lawn with fewer than 20 people, or in an area

---

[6]     Plaintiff apparently chose to proceed with his prayer vigil on September 11, 2021, at the Capitol Grounds without having received a permit, presumably because his demonstration involved 19 or fewer people.  https://twitter.com/revmahoney/status/1436796911151894530.

[7]     This rationale is slightly different from the one that Plaintiff identified when seeking preliminary injunctive relief.  His initial affidavit states that he "felt called" to hold the vigil "within view of where the events of January 6, 2021 took place."  Pl.'s Decl. ¶ 8.  The West Front Lawn, however, is only one of the many areas outside Capitol Square that fits the description.

outside of Capitol Square with 20 people or more.  Plaintiff's as-applied challenge to these

regulations should be denied.[8]

### C.     The Traffic Regulations Do Not Substantially Burden Plaintiff's Right to Practice His Religion.

Plaintiff further claims that the Traffic Regulations have violated his rights under the Free

Exercise Clause because, "[o]n information and belief," the applicable "acts and policies are

neither neutral nor of general application."  Am. Compl. ¶ 87.  Plaintiff asserts that the

Government prohibited his religious gathering while allowing non-religious public gatherings.

*Id.*

The First Amendment's Free Exercise Clause is implicated only "when a law or

regulation imposes a substantial, as opposed to inconsequential, burden on the litigant's religious

practice."  *Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002).  Plaintiff's verified

pleading does not include any facts that establish that Defendants' reasonable limitations on the

areas for the public to demonstrate impose any burden at all on his exercise of religion.  Plaintiff

has not explained why the exercise of his religion is dependent on holding the prayer vigil in

Area 1, as opposed to another nearby area on the Capitol Grounds with a view of the Capitol.

The Court should conclude that Plaintiff has not stated an actionable Free Exercise Clause claim.

For the same reason, Plaintiff has failed to allege facts sufficient to support an essential

element of an RFRA claim.  Under the statute, the "Government shall not substantially burden a

---

[8]     Based on this analysis for adjudicating Plaintiff's freedom of speech claims, the Court should dismiss the Second Cause of Action, which alleges a violation of his rights to assemble and associate.  *See Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 681 (2010) ("speech and expressive-association rights are closely linked" and "[w]hen these intertwined rights arise in exactly the same context, it would be anomalous for a restriction on speech to survive constitutional review under our limited-public-forum test only to be invalidated as an impermissible infringement of expressive association" (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (understanding associational freedom as "implicit in the right to engage in activities protected by the First Amendment"))).

person's exercise of religion even if the burden results from a general rule of applicability," unless the government can demonstrate that "the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1.  The plaintiff bears the initial burden of establishing the elements of a *prima facie* case, and once a *prima facie* case has been established, the government bears the burden of showing a compelling interest and that it used the least restrictive means to carry out that interest.  *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015); *see Kaemmerling v. Lappin*, 553 F.3d 669, 677-78 (D.C. Cir. 2008); *see also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006) (plaintiff carries the initial burden of showing a *prima facie* RFRA case).[9]

As discussed above, USCP's temporary security measures impose no burden on Plaintiff's ability to practice his religion, and Plaintiff has provided no evidence to the contrary. Plaintiff may conduct his prayer vigil at another nearby area on the Capitol grounds with a view of the Capitol building without any meaningful burden to his ability to exercise his religion.[10]

---

[9]     For example, the D.C. Circuit declined to find a *prima facie* violation of RFRA when a plaintiff-appellant failed to show how the government's collection of DNA substantially burdened any religious exercise.  *See Kaemmerling*, 553 F.3d at 679.  In *Kaemmerling*, the plaintiff-appellant failed to "state a substantial burden on his religious exercise" because he did not identify any action or practice that would have been burdened by the government's collection of DNA.  *Id.*  A desire to have the government conduct its affairs in conformance with a plaintiff's religious beliefs does not suffice to establish a *prima facie* violation.  *Id.* at 680.

[10]    Plaintiff's RFRA claim against the individual defendants fail because the statute provides for claims only against "a government."  42 U.S.C. § 2000bb-1(c) ("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in judicial proceeding and obtain appropriate relief against a government.").  Because the three Capitol Police Board members and the U.S. Capitol Police Chief who have been named as Defendants in this action are not "a government," the Court may not award relief against them.  Plaintiff, therefore, has not stated an actionable claim under the statute against them.

Because Plaintiff has filed to state a *prima facie* case under the RFRA, his claim under the statute

should be dismissed pursuant to Rule 12(b)(6).

### III.   PLAINTIFF HAS NOT STATED A DUE PROCESS CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Invoking his Fifth Amendment right to due process of law, Plaintiff claims that the

Traffic Regulations are "unconstitutionally vague on their face" because (1) they allow the

Government "unfettered discretion" regarding permit decisions and (2) the Board's orders are

not published.  Am. Compl. ¶¶ 98-99.

Under the Fifth Amendment, no person shall "be deprived of life, liberty, or property,

without due process of the law." U.S. Const. amend. V.  To prevail on a due process claim, a

plaintiff must demonstrate three elements: (1) "deprivation of a protected liberty or property

interest," (2) "by the government," (3) "without the process that is 'due' under the Fifth

Amendment."  *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015).

However, there is no property interest in a permit.  *See Conti v. United States,* 291 F.3d 1334,

1342 (Fed. Cir. 2002) (holding that permit bestowed a revocable license, not a Fifth

Amendment property right); *United States v. Fuller,* 409 U.S. 488, 493, (1973) (stating

no property rights are created in permits and licenses); *Alves v. United States,* 133 F.3d 1454,

1457 (Fed. Cir. 1998) (same).  Accordingly, because Plaintiff is unable to demonstrate that he

has a fundamental right to or a constitutionally protected property interest in the permit, his due

process claim fails.

As to Plaintiff's claim that the regulations are vague on their face, a regulation is

unconstitutionally vague only if "it either forbids or requires the doing of an act in terms so

vague that men of common intelligence must necessarily guess at its meaning and differ as to its

application." *Smith v. Harvey*, 541 F. Supp. 2d 8, 16 (D.D.C. 2008) (quoting *United States v. Barnes*, 295 F.3d 1354, 1366 (D.C. Cir. 2002) (internal quotations and citation omitted).

Plaintiff theorizes that the Traffic Regulations are unconstitutionally vague for two reasons.  He asserts that the regulations confer public officials with "unfettered discretion" in determining whether to grant a permit and that "[t]here are no provisions . . . that safeguard requests for public access from unfettered or unbridled discretion."  Am. Compl. ¶ 65. Defendants addressed the same issue above in the context of Plaintiff's First Amendment claims and incorporates those arguments here by reference.[11]  The Court should conclude that the regulations do not confer "unfettered" discretion on public officials to determine whether a permit should be granted and therefore do not violate Plaintiff's Fifth Amendment due process rights.

Plaintiff's argument that the regulations are unconstitutionally vague because "the Government does not publish orders of the Board," Am. Compl. ¶ 99, is meritless.  Whether the Board's orders are published, however, has nothing to do with notifying the public about "what expressive activity is prohibited and what expressive activity is allowed."  *Id.*  This is because neither the Board's Orders nor the Traffic Regulations prohibit expressive activity.  Rather, the Board's orders identify the locations on the U.S. Capitol Grounds at which groups of at least 20 people may not engage in demonstration activity.  The Traffic Regulations require groups of that size to submit a permit application and expressly do not base permit decisions on the viewpoint of the applicants.

---

[11]     Plaintiff further alleges a due process claim based on the notion that the Traffic Regulations are unconstitutionally overbroad.  Am. Compl. ¶ 100.  This contention also was addressed above in connection with the same argument advanced as part of Plaintiff's First Amendment claim.  Defendants incorporate that argument by reference here.

For these reasons, Plaintiff has failed to state an actionable due process claim and has failed to establish that the Traffic Regulations are unconstitutionally vague.

## IV.    PLAINTIFF'S EQUAL PROTECTION CLAIM IS MERITLESS.

Finally, Plaintiff alleges that Defendants "refused" to grant him a permit for the proposed September 11, 2021, prayer vigil on the West Front Lawn but have "allow[ed] other demonstrations in the same areas and similar areas." Am. Compl. ¶ 106. He argues, "[o]n information and belief," that this constitutes impermissible discrimination against him "on the basis of speech- and relegation-related activities in a public forum." *Id.* ¶ 108.

The equal protection principles embodied in the Due Process Clause of the Fifth Amendment direct that "all persons similarly situated should be treated alike." *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 650 (D.C. Cir. 1987) (quoting *Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). Plaintiff's claim falls into the category of equal protection claims known as a "class of one" claim because he is not claiming to be a member of a protected class. "If an individual is not a member of a protected class but is arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity—the individual may qualify as a "class of one" and be entitled to pursue an equal protection claim." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000)).

The Court should reject Plaintiff's argument. There is no basis for his speculative assertion that his application to hold a prayer vigil for 20 or more people in Area 1 on September 11, 2021, was not approved because of the content of his speech or his religion. Rather, the non-approval of the application was mandated by the Traffic Regulations and the September 3, 2021, Board Order that confirmed that Area 1 would remain closed to demonstrations for groups of more than 19 people.

There also is no basis for Plaintiff's speculative contention, made "on information and belief," that he has been subjected to discrimination.  Am. Compl. ¶ 108.  He alleges that the Board issued a permit to the American Conservative Union on July 27, 2021, a permit for another unspecified event on the same day, and an event involving Representative Cori Bush from June 30 to August 3, 2021, on the Eastern front steps.  *Id.* ¶ 42.  Plaintiff argues that his prayer vigil application should have been granted as well.

But Plaintiff is not situated similarly to the applicants for the other events.  Those demonstrations were not subject to the Traffic Regulations because they were sponsored or requested by Members of Congress.  *See Kroll v. U.S. Capitol Police*, 847 F.2d 899, 902-03 (D.C. Cir. 1988) (noting that the Capitol Police Board's permit system "by its nature applies to those outside the Capitol Hill community of Members of Congress (and their staffs).").  Members of Congress enjoy this privilege due to the unique nature of our elected officials' constitutional duties.  Grossi Decl. ¶ 20.  Members of Congress and their staffs are exempt from the statute prohibiting disorderly or disruptive conduct on the Capitol Grounds, demonstrating within Capitol Buildings, or obstructing passage on the Grounds.  *Id.* ¶ 21; 40 U.S.C. § 5104(e)(2)(D), (F), (G), (e)(3).

On July 27, 2021, two events were held in Area 1, and both were requested or held by Members of Congress.  Grossi Decl. ¶¶ 18-19.  One event was held in Area 1 on the morning of July 27, 2021.  *Id.* ¶ 18.  The other event, initially requested by a different Member, sought to be held on the East Front of the Capitol within Capitol Square on July 22, 2021, was held in Area 1 on the afternoon of July 27, 2021.  *Id.* ¶ 19.  Although this event was sponsored by the American Conservative Union, both the original requesting Member, an additional Senator, and their staff requested that a permit be granted for this event.  *Id.*  Because of the significant involvement of

20

Members of Congress in requesting and participating in these events, the permitting rules in the USCP's regulations did not apply.

The same is true with the unpermitted demonstration on the East Front stairs in early August. *Id.* ¶ 22.  Notably, when Representative Bush and other Members of Congress ceased their participation, the remaining demonstrators were advised that they were in violation of the regulations and that the demonstration no longer was authorized. *Id.* ¶ 23.

Plaintiff's prayer vigil proposed for September 11, 2021, was neither requested nor sponsored by a Member of Congress.  The application was therefore subject to the applicable regulations, and the USCP Special Events Section could not process the application because it contemplated a group of 20 people or more in Area 1.

Accordingly, the USCP Special Events Section did not approve Plaintiff's application solely because of the proposed *location*, not because of the speech he sought to express.  Plaintiff undermines his argument that the Board and the USCP Special Events Section have discriminated against him by emphasizing that Plaintiff routinely secured permission in the past for his prayer vigils.  Am. Compl. ¶ 44.  He also does not dispute that he could have held (and actually did hold) the September 11th vigil this year at another place on the Capitol Grounds either outside the temporary security perimeter or with fewer than 20 participants.  And the fact that the Special Events Section tried to work with Plaintiff to find an acceptable location for his vigil undermines his accusation that he is being treated differently based on his religion or his message.

The Court should reject Plaintiff's arguments that he was subjected to a content-based restriction or that he was treated differently from other similarly situated applicants.

**CONCLUSION**

For the reasons stated above, the Court should grant this motion and dismiss the First

Amended Verified Complaint pursuant to Rule 12(b)(6).

Dated:  December 10, 2021     Respectfully submitted,

              MATTHEW M. GRAVES, D.C. Bar #481052
              United States Attorney

              BRIAN P. HUDAK
              Acting Chief, Civil Division

                 /s/ *Paul Cirino*
              PAUL CIRINO, D.C. Bar #1684555
              Assistant United States Attorney
              Civil Division
              U.S. Attorney's Office for the District of Columbia
              555 4th Street, N.W.
              Washington, D.C.  20530
              Telephone: (202) 252-2529
              paul.cirino@usdoj.gov

              *Counsel for Defendants*