UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES CAPITOL ) <br> POLICE BOARD, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 21-2314 (JEB) |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:   January 28, 2022

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION .........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.  PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE CLAIM BASED ON A VIOLATION OF THE FREE SPEECH CLAUSE. ...........................................................2

    A.  The Traffic Regulations Are Not Facially Unconstitutional. ....................................2

        1.  The Traffic Regulations Constitute a Reasonable "Time, Place, and Manner" Restriction. ...................................................................................3

        2.  The Traffic Regulations Do Not Confer Officials with Unbridled Discretion. ..................................................................................................6

    B.  Defendants' Application of the Traffic Regulations to Plaintiff's Permit Application Was Not Unconstitutional. ....................................................................9

II.  THE BOARD HAS NOT INFRINGED PLAINTIFF'S RIGHT TO RELIGIOUS EXERCISE. ......................................................................................................................12

III.  THE COURT SHOULD DISMISS PLAINTIFF'S EQUAL PROTECTION CLAIM. ............................................................................................................................14

IV.  PLAINTIFF'S DUE PROCESS CLAIM IS MERITLESS. .............................................14

CONCLUSION ............................................................................................................................ 16

## TABLE OF AUTHORITES

**Cases**                                                                                                                          Page(s)

*Boardley v. Dep't of Interior*,
   615 F.3d 508 (D.C. Cir. 2010) ............................................................................... 6

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ............................................................................................. 11

*Community for Creative Non-Violence v. Turner*,
   893 F.2d 1327 (D.C. Cir. 1990) ............................................................................. 6

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
   473 U.S. 788 (1985) ............................................................................................... 9

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
   284 F. Supp. 2d 15 (D.D.C. 2003) ....................................................................... 13

*Kaemmerling v. Lappin*,
   553 F.3d 669 (D.C. Cir. 2008) ............................................................................. 13

*Kroll v. U.S. Capitol Police*,
   847 F.2d 899 (D.C. Cir. 1988) ............................................................................. 12

*Lederman v. United States*,
   291 F.3d 36 (D.C. Cir. 2002) ............................................................................. 3-5

*Levitan v. Ashcroft*,
   281 F.3d 1313 (D.C. Cir. 2002) ........................................................................... 13

*Nat'l Sec. Couns. v. CIA*,
   931 F. Supp. 2d 77 (D.D.C. 2013) ....................................................................... 10

*Shuttlesworth v. Birmingham*,
   394 U.S. 147 (1969) ............................................................................................... 6

*Texas v. United States*,
   798 F.3d 1108 (D.C. Cir. 2015) ........................................................................... 13

*United States v. Grace*,
   461 U.S. 171 (1983) ............................................................................................... 4

*Wash. All. of Tech. Workers v. Dep't of Homeland Sec.*,
   892 F.3d 332 (D.C. Cir. 2018) ............................................................................. 14

**Statutes**

2 U.S.C. § 1969 ............................................................................................................ 8

2 U.S.C. § 1979 ................................................................................................. 7, 8, 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................... 2, 10, 12, 14

Federal Rule of Evidence 201 .................................................................................... 10

Defendants United States Capitol Police Board, and others, respectfully submit this Reply in Further Support of Defendants' Motion to Dismiss.

## INTRODUCTION

The inescapable, undisputed fact that dooms Plaintiff's complaint is that he was able to hold his September 11, 2021, prayer vigil on the Capitol Grounds. That prayer vigil could have occurred in Plaintiff's chosen location, the West Front Lawn, with as many as 18 other participants. If more than 18 others showed up, he could have held the prayer vigil in another suitable location in the shadow of the U.S. Capitol near the West Front Lawn. Plaintiff's opposition is fatally flawed because it fails to acknowledge and accept these truths.

Instead, relying on broad constitutional maxims and cases that are factually distinguishable, Plaintiff attempts to weave his way through rigorous constitutional and statutory requirements to argue that his rights were violated because he could not have his prayer vigil at the West Front Terrace with 20 or more people. He claims that the Capitol Police Board's temporary closure of that area to large groups for security reasons was the product of regulations that were unconstitutionally vague and confer officials with unbridled discretion. Plaintiff complains that the denial of his permit application subjected him to discrimination based on the content of his message and because of his status as an ordinary U.S. citizen, and not a Member of Congress. Plaintiff urges the Court not to dismiss the case because he believes discovery will allow him to pursue these fruitless theories.

Plaintiff, however, has not stated a constitutional or statutory claim upon which relief can be granted, and these mortal defects cannot be cured in discovery. The challenged regulations are reasonable time, place, and manner restrictions that are narrowly tailored to the Board's substantial interest in maintaining security of the U.S. Capitol and its community and provide

Plaintiff with ample opportunity to convey his message.  The regulations are not facially unconstitutional, nor were they unconstitutional as applied to Plaintiff's permit application.  Because the permit process did not significantly burden Plaintiff's ability to exercise his religion, his claims under the Free Exercise Clause and the Religious Freedom Restoration Act are not actionable.  Plaintiff's equal protection claim lacks merit because he was treated no differently than similarly situated permit applicants, including at least 10 others who wanted to demonstrate in the same place that Plaintiff wanted to hold his vigil.  Finally, there was no due process violation because Plaintiff was not deprived of any liberty or property interest when his permit application was denied.

For these reasons, as explained further below and in Defendants' opening brief, the Court should grant this motion and dismiss all claims in the Amended Complaint pursuant to Rule 12(b)(6).

**ARGUMENT**

**I.   PLAINTIFF HAS NOT ALLEGED AN ACTIONABLE CLAIM BASED ON A VIOLATION OF THE FREE SPEECH CLAUSE.**

Plaintiff alleges that he has asserted plausible claims that the Traffic Regulations are unconstitutional on their face and as applied to his application for a permit to hold a prayer vigil at the West Front Lawn of the Capitol on September 11, 2021.  Opp.[1] at 13-30.  Defendants will address these arguments separately.

   **A.   The Traffic Regulations Are Not Facially Unconstitutional.**

Defendants' motion established that the Traffic Regulations are not facially unconstitutional because they are narrowly tailored, content-neutral "time, manner, and place"

---

[1] Citations to "Opp." refer to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, filed January 7, 2022.  ECF No. 18.

restrictions on protected speech that allow for alternative channels of communication. Defs.' Mem.[2] at 10-15. Defendant further argued that the regulations do not confer "unfettered" or "unbridled" discretion on public officials. *Id.* at 8.

### 1. *The Traffic Regulations Constitute a Reasonable "Time, Place, and Manner" Restriction.*

Plaintiff responds that his challenge "is on all fours" with the D.C. Circuit's decision in *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). Opp. at 1. This argument, however, reflects an erroneous interpretation of that case and ignores the Board's legitimate ongoing security concerns, particularly in the aftermath as the insurrection on the U.S. Capitol of January 6, 2021.

*Lederman* involved a challenge to a former Traffic Regulation that banned "almost" all "demonstration activity" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol. 291 F.3d at 39. The D.C. Circuit characterized the challenged regulation as a "virtually *per se* ban on expressive activity on the East Front sidewalk" and concluded that it was not narrowly tailored to controlling traffic and promoting security around the Capitol. *Id.* at 45-46. The appellate court thus held that the regulation did not pass constitutional muster.

The instant case is distinguishable from *Lederman* in several significant ways. *First*, the Board's process for permitting demonstration activity on the U.S. Capitol Grounds is not accurately described as a near-total ban on demonstration activity, even in areas where such activity is temporarily restricted. The regulations provide that groups of 19 people or fewer do not need a permit to engage in demonstration activity, even in those restricted areas. Traffic Regulations § 12.3.10. For this reason—unlike the regulation at issue in *Lederman*—the current

---

[2] Citations to "Defs.' Mem." refer to the Memorandum of Law in Support of Defendants' Motion to Dismiss, filed December 10, 2021. ECF No. 16-1.

3

permitting process is not a *per se* ban of all expressive activity in the restricted areas and thus does not run afoul of *United States v. Grace*, 461 U.S. 171, 182 (1983).

*Second*, the D.C. Circuit in *Lederman* concluded that the ban on demonstration activity on the sidewalk in question was not narrowly tailored to the Board's stated interest in public safety and traffic control. 291 F.3d at 45. In the instant case, the analysis is materially different. The temporary restrictions on large groups from engaging in demonstration activity in certain locations adjacent to the U.S. Capitol is narrowly tailored to the Board's interest in protecting the building and its occupants from another incursion. The *Lederman* court found the relationship between demonstration activity on the sidewalk and traffic control and safety to be unpersuasive, a conclusion that was reasonable under the facts of that case. Here, the Board continuously assesses the security threats to the Capitol and has tailored its security measures to address those threats.[3] *See* Grossi Decl.[4] ¶¶ 6-7, 10-15 & Exs. 3-4. One of those measures has been to temporarily restrict the areas closest to the Capitol where large groups may congregate and engage in demonstration activity. The Board's Orders temporarily closing Area 1 to such large groups is therefore a reasonable and proportionate measure to respond to ongoing security risks to the Capitol and members of the Capitol community.

*Third*, the permitting process challenged by Plaintiff is precisely the type of restriction that the *Lederman* court found to survive constitutional scrutiny. In striking down the ban on expressive activity on the sidewalk, the appellate court noted that the Board "could require

---

[3] Plaintiff's allegations that the Board's "naked" and "abstract" security concerns are "mere speculation or conjecture" are inconsistent with the record. Defendants have submitted the relevant Board orders that confirm that it designated certain areas as restricted based on "an evaluation of the current security posture of the Capitol complex, and the upcoming demonstrations on the Capitol Grounds in the city." Grossi Decl. Ex. 4, ECF No. 10-1 at 23.

[4] Citations to "Grossi Decl." refer to the Declaration of Lieutenant Scott J. Grossi, dated September 8, 2021. ECF No. 10-1.

4

permits for demonstrations on the sidewalk, limit the duration of such demonstrations, restrict the number of individuals who may demonstrate simultaneously, require that demonstrators present bags and other personal possessions for screening by police officers, or prohibit activities likely to attract *large* crowds." 291 F.3d at 46 (emphasis in original). This is precisely what the Board has done. The permitting process reflected in the current Traffic Regulations require permits for demonstrations in restricted areas involving 20 or more people, prohibit demonstrations from lasting more than 24 hours, and impose appropriate restrictions concerning props, signs, and sound projection. *See generally* Traffic Regulations Ch. 12. Plaintiff's argument glaringly sidesteps this critical aspect of the D.C. Circuit's decision, which supports the constitutionality of the regulations Plaintiff challenges in this case.

For these reasons, Plaintiff is incorrect that the Board's current Traffic Regulations concerning demonstration activity constitute a *per se* ban on expressive activity in restricted areas of the Capitol Grounds, inappropriately minimizes the Board's significant interest in security, especially since the insurrection of January 6, 2021, and fails to grapple with the key portions of *Lederman* that expressly approve the reasonable limitations on demonstrations that the Board has implemented. *Lederman* is thus distinguishable from the instant case and does not govern the outcome of this motion.

Regarding the issue of adequate alternate channels of communication, Plaintiff's argument that the Government has "shunt[ed] disfavored demonstrators to the outer rim of the Capitol Grounds," Opp. at 20-21, reflects a misunderstanding of the Traffic Regulations. The permitting process for demonstrations on the Capitol Grounds applies only to groups of 20 or more people. Groups of 19 or fewer individuals may engage in demonstration activity even in temporarily restricted areas without a permit. All individuals and groups may engage in

5

demonstration activity in areas that are open for such activity, and many of those areas are close to the Capitol building and/or feature appealing views of the Capitol.[5]  Finally, the permitting rules are not based on the identity of the individual or group requesting permission to demonstrate or the content of their proposed expression.  Traffic Regulations § 12.1.20.  There is no merit to Plaintiff's argument that the Traffic Regulations fail to allow reasonable alternatives for communication.

The Court should conclude that the Traffic Regulations constitute a constitutional time, place, and manner restriction on protected expression at the U.S. Capitol Grounds that is narrowly tailored to the interest in maintaining security at the Capitol and offers ample alternative channels for communication.

### 2. *The Traffic Regulations Do Not Confer Officials with Unbridled Discretion.*

Plaintiff further argues that the Traffic Regulations are facially unconstitutional because they fail to provide "narrow, objective, and definite standards to guide the licensing authority" and ensure a content-neutral determination."  Opp. at 23 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) (cited in *Community for Creative Non-Violence v. Turner*, 893 F.2d 1327, 1390 (D.C. Cir. 1990)).  Plaintiff's argument is that the Board's security determinations regarding which areas of the Capitol Grounds should be temporarily closed are not public.  But Plaintiff then makes the unjustified leap that the Traffic Regulations do not set forth definite

---

[5] Plaintiff's reliance on *Boardley v. Dep't of Interior*, 615 F.3d 508, 524 (D.C. Cir. 2010), is misplaced.  In that case, the agency promulgated regulations requiring a permit to distribute leaflets in a national park, and the D.C. Circuit held that the regulations failed to "leave open ample intra-forum alternatives for communication."  *Id.* at 525.  In this case, as discussed above and in Defendants' opening brief, there are numerous areas on the Capitol Grounds for groups of 20 or more people to engage in demonstration activity.  This is not a case, like *Boardley*, in which individuals may engage in expressive activity without a permit only outside of the forum.

standards regarding the permit process for demonstration activity. This argument is illogical and unconvincing.

Indeed, there can be no serious dispute that the Traffic Regulations set forth clear and objective standards as to when the Capitol Police's Special Events Section should determine the eligibility for a permit for demonstration activity. That process is set forth in Chapter 12 of the Traffic Regulations. Only groups of 19 or more people require a permit. Traffic Regulations § 12.4.

Plaintiff instead argues that the Board has provided no standards regarding its determinations as to which areas of the Capitol Grounds should be temporarily closed, suggesting ambiguously that the Traffic Regulations should include unspecified "standards" that presumably would identify the factors to be considered in deciding whether a specific area of the Capitol Grounds should be temporarily closed to demonstration activity. But even if it were possible for the Board to craft a singular "standard" that might apply to such complex and momentaneous security determinations, it would be inappropriate for such information to be made public.

The Board's security decisions are necessarily based on assessments of threats to the security of the U.S. Capitol building and community. The periodic decisions regarding which security measures should be taken, including whether to install perimeter fencing or temporarily close certain areas of the Capitol Grounds, are necessarily made based on non-public information. *See* 2 U.S.C. § 1979(b) (providing that the Board may release "security information" only if it determines that the release of such information "will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police."). Defendants do not interpret Plaintiff's

7

opposition as suggesting that the Board's deliberations on these matters should be available to the public.

Indeed, the Board's decision-making regarding security is fluid and depends on threat assessments at the time the decisions are made. The information that forms the basis of the Board's decisions constitutes "security information" that the Board is not required to publicly release. 2 U.S.C. § 1979(a) (defining "security information" as including information obtained by the Board that "is sensitive with respect to the policing, protection, physical security, intelligence, counterterrorism actions, or emergency preparedness and response relating to Congress, any statutory protectee of the Capitol Police, and the Capitol buildings and grounds."). For these reasons, even if it were possible for the Board to articulate the factors that apply to its security decisions, the Board is not required to include any such standards in its regulations or publicly disclose the basis for any security-related decision.

Plaintiff therefore misses the mark by contending that the Traffic Regulations are facially unconstitutional because they do not incorporate such standards. The Board's security decisions involve much more than the regulation of vehicular and pedestrian traffic. Indeed, the Traffic Regulations are intended only to implement 2 U.S.C. § 1969(a), in which Congress conferred in the Board "exclusive charge and control of the regulation and movement of all vehicular and other traffic" within the Capitol Grounds. Chapter 12 of the Traffic Regulations is limited to setting forth rules regarding demonstration activity, including the requirement for groups of 19 or more persons to obtain a permit. There is no logic to Plaintiff's argument that the regulations are constitutionally infirm because they fail to address security matters.

Accordingly, the Court should reject Plaintiff's argument that the Traffic Regulations are facially unconstitutional because they do not include standards for the Board's determinations as

to when specific areas of the Capitol Grounds should be temporarily restricted to demonstration activity.

      **B.    Defendants' Application of the Traffic Regulations to Plaintiff's Permit Application Was Not Unconstitutional.**

Plaintiff next alleges that, under the intermediate scrutiny test of *Cornelius v. NAACP Legal Defense and Education Fund*, 473 U.S. 788 (1985), the Board's denial of his permit application was not narrowly tailored and did not leave open alternate channels of communication, was not content neutral, and impermissibly discriminated against Plaintiff on the basis of speaker identity[6]. Opp. at 23-30. These arguments are unpersuasive.

Plaintiff's allegations on this issue do not state a claim upon which relief can be granted. His argument is that three events held by others were allowed and that his event was not allowed. Without identifying the content of the expression in each of the other three events, Plaintiff leaps to the conclusion that the reason for the denial of his prayer vigil was based on the content because it was "different" from his proposed prayer vigil. Opp. at 25. That argument is not supported by a plausible factual basis, as Plaintiff fails to even allege what it was about his speech that was meaningfully different from the speech in the other three events such that Defendants discriminated against him. As developed in connection with Plaintiff's prior motion in this case, Grossi Decl. ¶ 26, the Special Events Section did not approve Plaintiff's proposed prayer vigil solely because the proposed location (the West Front Terrace) was temporarily closed for demonstrations. There is no basis for Plaintiff's speculative contention that the Board even considered the content of his proposed vigil in deciding to deny his permit application.

---

[6]    In support of his as-applied challenge, Plaintiff incorporates his above arguments that the denial of his application was not narrowly tailored and did not leave open alternate channels of communication. Opp. at 24. Defendants will do the same regarding their responses to Plaintiff's arguments on these issues.

9

Plaintiff does not dispute that the three other events in July and August 2021 were sponsored or requested by Members of Congress. Opp. at 26. Instead, he seeks to exclude those undisputed facts from the Court's consideration of this motion, arguing that they are "amenable to disproof or material qualification or contextualization in the course of discovery." *Id.* The Court should reject this argument because the Amended Complaint specifically references these three events, and even specifically mentions that Representative Bush held an event on the Eastern steps after Congress adjourned for its August 2021 recess. Am. Compl. ¶¶ 39-41, 43. In response to Plaintiff's motion for temporary injunctive relief, Defendants submitted a declaration explaining that each of these three events were sponsored or requested by Members of Congress. Grossi Decl. ¶¶ 18-19, 22 (ECF No. 10-1). Plaintiff did not dispute any of those facts in connection with that motion or in his opposition to the instant motion. It is appropriate for the Court to consider these undisputed facts, which address allegations specifically referenced in the complaint. "While a court may not consider 'matters outside the pleadings' in evaluating a motion to dismiss under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56, documents that are referenced in, or are an integral part of, the complaint are deemed not 'outside the pleadings.'" *Nat'l Sec. Couns. v. CIA*, 931 F. Supp. 2d 77, 102 n.14 (D.D.C. 2013) (citation omitted); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can accurately and readily be determined from sources whose accuracy cannot be questioned.").

Even if the Court is not inclined to consider this record evidence, it should dismiss Plaintiff's as-applied challenge because it fails to account for the numerous other permit applications from members of the public that were denied. Plaintiff concedes that the Board received 11 additional applications for permits for demonstration activity on the West Front

10

Lawn that it did not approve. Am. Compl. ¶¶ 42-43. Plaintiff's opposition, however, inappropriately ignores these denials of other applications from other members of the public for events in the same place as Plaintiff's proposed prayer vigil. The Court should not allow Plaintiff's claim to proceed where he fails to acknowledge his own allegation that he was, in fact, treated the same way as nearly a dozen other similarly situated applicants and instead focuses on the three events sponsored or requested by Members of Congress to complain that he is being singled out for the content of his speech. Considering all of Plaintiff's allegations on this issue, there is no plausible factual basis to conclude that the Traffic Regulations were being applied in an arbitrary, discriminatory, or unconstitutional manner.

Similarly, Plaintiff's argument that he was subjected to discrimination based on his "identity" is groundless. Plaintiff characterizes his "identity" as a "non-Member of Congress." Opp at 29. For starters, the Amended Complaint fails to allege a First Amendment violation arising from discrimination based on Plaintiff's identity as an individual who is not a Member of Congress. *See* Am. Compl. ¶¶ 63-93 (First, Second, and Third Causes of Action, alleging claims based on violations of Plaintiff's First Amendment rights). Plaintiff's argument on this point should be dismissed on this ground alone.

If the Court were to reach the merits, it should conclude that Plaintiff has failed to state a claim upon which relief can be granted. The U.S. Supreme Court has noted that the First Amendment "generally prohibits the suppression of political speech based on the speaker's identity." *Citizens United v. FEC*, 558 U.S. 310, 350 (2010). Plaintiff has cited no legal authority to support the proposition that his membership in the expansive segment of the U.S. population that is not presently a Member of Congress can constitute a category of people with a particular "identity" in the First Amendment context.

11

Instead, Plaintiff minimizes the D.C. Circuit's recognition that Members of Congress are not subject to the Traffic Regulations, *Kroll v. U.S. Capitol Police*, 847 F.3d 899, 902-03 (D.C. Cir. 1988) (noting that the Board's permit system "by its nature applies to those outside the Capitol Hill community of Members of Congress (and their staffs)."), characterizing the court's assertion as "dictum." Opp. at 28. Dictum or not, the D.C. Circuit's pronouncement accurately reflects the longstanding understanding that Members of Congress are not subject to the Traffic Regulations and may demonstrate in areas that are restricted or closed.

Plaintiff's own allegations and uncontested factual assertions in the record make clear that the Traffic Regulations were not unconstitutionally applied to Plaintiff's permit application. The Court should reject his arguments and dismiss his claims based on the freedom of speech, association, and assembly pursuant to Rule 12(b)(6).

## II. THE BOARD HAS NOT INFRINGED PLAINTIFF'S RIGHT TO RELIGIOUS EXERCISE.

Plaintiff further argues that he has alleged actionable claims under the Free Exercise Clause and the Religious Freedom Restoration Act because the Board "altogether" precluded his religious exercise. Opp. at 30-33. These arguments lack any factual or legal basis.

Plaintiff claims that he was called by God to hold a prayer vigil on the West Front Lawn on September 11, 2021. Am. Compl. ¶ 115. Defendants, however, did not prevent Plaintiff from doing that. Defendants instead declined to issue a permit for a prayer vigil at that location with 20 or more participants. Plaintiff does not state that having a prayer vigil with more than 19 individuals was something that he was called to do or that the larger audience was central to the practice of Plaintiff's religious life. Nor does Plaintiff allege that holding a prayer vigil in a location other than the West Front Lawn or having the vigil with fewer than 19 people would violate his religious beliefs or otherwise be inconsistent with the tenets of his religion. To the

12

extent that these distinctions between the exact location of the prayer vigil and the maximum number of attendees constitute any burden on Plaintiff's religious practice, such burdens are inconsequential, rather than substantial. *See Levitan v. Ashcroft*, 281 F.3d 1313, 1320 (D.C. Cir. 2002).

Because Plaintiff had the opportunity to conduct a prayer vigil at the West Front Lawn on September 11, 2021, there is no merit to his argument that the decision to deny his permit application substantially burdened the free exercise of his religion. Plaintiff's claims thus fail even under the heightened standard of the Religious Freedom Restoration Act. *See, e.g.*, *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (Under the statute, "[a] substantial burden exists when government action puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'").

If the Court were to conclude that the limitation on demonstration activity at the West Front Lawn to 19 people or fewer constitutes a substantial burden on Plaintiff's exercise of his religion, it should dismiss Plaintiff's Free Exercise and Religious Freedom Restoration Act claims because Defendants have established a compelling government interest to justify such burden. As discussed above, the Board had determined, for security reasons, that certain areas on the Capitol Grounds, including the West Front Lawn, are unavailable to demonstration activity involving more than 19 persons. Plaintiff's opposition does not address this point in the free exercise context and therefore should be treated as conceded. "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); *see also Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015)

13

("[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded."); *Wash. All. of Tech. Workers v. Dep't of Homeland Sec.*, 892 F.3d 332, 348 n.5 (D.C. Cir. 2018) (observing that binding precedent establishes that Local Rule 7(b) is properly applied "in the context of a 12(b)(6) motion to dismiss").

For the above reasons, the Court should dismiss Plaintiff's Free Exercise and Religious Freedom Restoration Act claims pursuant to Rule 12(b)(6).

### III. THE COURT SHOULD DISMISS PLAINTIFF'S EQUAL PROTECTION CLAIM.

Plaintiff asserts that he has stated an actionable claim under the Equal Protection Clause. He alleges that the Board discriminated against him based on the proposed content of his speech because "it allowed other similar events with different content to go forward." Opp. at 34-35. The same arguments were addressed above in connection with Plaintiff's First Amendment Claims. *See supra* Argument § I.B. Defendants incorporate their responsive arguments herein by reference and respectfully request that the Court dismiss the equal protection claims pursuant to Rule 12(b)(6).

### IV. PLAINTIFF'S DUE PROCESS CLAIM IS MERITLESS.

Plaintiff contends that his claim under the Due Process Clause is actionable because he has alleged that the Traffic Regulations are unconstitutionally vague. Specifically, Plaintiff argues that "persons of ordinary intelligence are unable to determine where and under what terms they are allowed to engage in demonstration activity on the Capitol Grounds." Opp. at 35-36.

Plaintiff's opposition, however, bypassed a dispositive threshold issue. As Defendants established, to state an actionable claim under the Due Process Clause, the plaintiff must allege that the government deprived him or her of a protected liberty or property interest. Defs.' Mem.

14

at 17. Here, Plaintiff has not even alleged that the denial of his permit application to hold a prayer vigil on the West Front Lawn of the Capitol with at least 18 other people constitutes a cognizable liberty or property interest under the Due Process Clause. This claim should be dismissed.

Plaintiff instead dedicates his due process argument to the speculative theory that the Traffic Regulations violate his constitutional rights because an ordinary citizen is unable to determine where he or she can demonstrate on the Capitol Grounds. Opp. at 36. As discussed above, the Board makes periodic decisions regarding which areas should be restricted or closed to demonstration activity. These determinations are based on "sensitive information," 2 U.S.C. § 1979, including assessments of the threats to the Capitol and its community, and therefore are not publicly released. The Board has a statutory basis for not publishing information regarding security measures at the Capitol and legitimate reasons for not publicly disclosing how those decisions are made.

A person interested in engaging in demonstration activity involving 20 or more persons at the Capitol Grounds must secure a permit and is on notice that there are "Prohibited Demonstration Areas," including the "steps of the United States Capitol, on the steps of any building on the Capitol Grounds or in any area otherwise closed or restricted for official use." Traffic Regulations § 12.2.20. In applying for a permit to the U.S. Capitol Police's Special Events Section, *id.* § 12.4.20 n.37, the applicant need only ask which areas are available for the proposed demonstration. The Special Events Section routinely works with permit applicants to advise them as to which locations are suitable for the proposed demonstration. Accordingly, Plaintiff's contention that the Traffic Regulations are constitutionally invalid on this basis should be rejected.

## CONCLUSION

For the reasons set forth above and in Defendants' opening brief, the Court should grant this motion and dismiss the claims in the Amended Complaint.

Dated:  January 28, 2022

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

              /s/ *Paul Cirino*
PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
Civil Division
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

16