UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **PATRICK J. MAHONEY,** <br><br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES CAPITOL POLICE BOARD,** *et al.*, <br><br> **Defendants.** | Civil Action No. 21-2314 (JEB) |

**MEMORANDUM OPINION**

    For the third time in as many months, this Court is called upon to write at length on Plaintiff Patrick J. Mahoney's related suits against Defendants United States Capitol Police Board and certain individuals associated with the Board. As the Court recently explained, "Over the years, he has brought lawsuits seeking Court authority to conduct various religious activities on restricted federal grounds." Mahoney v. United States Capitol Police Bd. (Mahoney II), No. 22-760, 2022 WL 1014791, at *1 (D.D.C. Apr. 5, 2022), aff'd, No. 22-5094 (D.C. Cir. Apr. 15, 2022). In his current Motion, Plaintiff seeks reconsideration of the Court's earlier Opinion in this case, which granted in part and denied in part the Government's Motion to Dismiss.

    Mahoney, a clergyman, brought this action after the Board denied his permit application to hold a large prayer vigil on the West Front Lawn of the Capitol on September 11, 2021. He was unsuccessful because the area was still closed to demonstrations in the wake of the January 6, 2021, attack on the Capitol. The Board later clarified that Plaintiff could go forward as long as his vigil attracted fewer than 20 people, or he could hold a larger vigil in an immediately adjacent area still on the Capitol Grounds. In the Court's prior Opinion, it dismissed four counts

1

of the Amended Complaint and allowed two to proceed to discovery. Mahoney now moves for reconsideration on a number of grounds, seeking reinstatement of all of his dismissed claims. He also requests, if unsuccessful, an order certifying an immediate interlocutory appeal under 28 U.S.C. § 1292(b). Because all but one of his reconsideration arguments are without merit and because this is not the rare case in which such interlocutory appeal is warranted, the Court will grant his Motion in part and deny it in the main.

**I.    Background**

As the Court recounted at length the factual and procedural background of this case in its prior Opinion, it provides here only a brief overview that relates to the current dispute. See Mahoney v. United States Capitol Police Bd. (Mahoney I), No. 21-2314, 2022 WL 523009, at *1 (D.D.C. Feb. 22, 2022). Plaintiff's Amended Complaint — the operative pleading in this case — alleged six counts and sought damages for his being denied a permit in September 2021, as well as declaratory and injunctive relief related to future prayer vigils. See ECF No. 13 (Am. Compl.) at 26–28.

The Court's Opinion granted the Government's Motion to Dismiss four of those counts. More specifically, it jettisoned Mahoney's free-speech claim, which encompassed both facial and as-applied causes of action, his claim under the Free Exercise Clause, his challenge pursuant to the Religious Freedom Restoration Act, and his due-process cause of action. See Mahoney I, 2022 WL 523009, at *4–7, *10–14. The Court held, however, that Plaintiff had stated a plausible claim for relief on his selective-enforcement claim brought pursuant to the Equal Protection Clause, as well as on his freedom-of-association claim. Id. at *7–9. It also clarified that although Mahoney could not obtain damages on his remaining constitutional counts, he

could pursue injunctive and declaratory relief. Id. at *14. Plaintiff now seeks reconsideration of the dismissed claims.

## II.     Legal Standard

Because Mahoney desires reconsideration of an interlocutory order, Federal Rule of Civil Procedure 54(b) governs the Court's analysis. See Prince George's Hospital Center v. Advantage Healthplan Inc., 985 F. Supp. 2d 38, 42 (D.D.C. 2013) ("Rule 54(b) is the appropriate procedural mechanism for reconsideration where, as here, the challenged order . . . does not constitute a final judgment."). "The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." Williams v. Savage, 569 F. Supp. 2d 99, 108 (D.D.C. 2008). Plaintiff thus has a somewhat lower bar to clear here, as "reconsideration of an interlocutory decision is available under the standard 'as justice requires.'" Judicial Watch v. Department of Army, 466 F. Supp. 2d 112, 123 (D.D.C. 2006); accord Lemmons v. Georgetown University Hospital, 241 F.R.D. 15, 21–23 (D.D.C. 2007).

The "as justice requires" standard is hardly a free pass; it may be met where, for example, the court "has patently misunderstood" the parties, strayed far afield from the issues presented, or failed to consider "a controlling or significant change in the law or facts . . . since the submission of the issue." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citations and quotation marks omitted). "These considerations leave a great deal of room for the court's discretion, and, accordingly, the 'as justice requires' standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" Lewis v. District of Columbia, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting Cobell, 224 F.R.D. at 272) (alteration in original). A court's discretion under Rule 54(b), however, is "limited by the law of

the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Singh v. George Washington University, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted) (quoting In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004)).

### III.   Analysis

Mahoney's Motion alleges a number of errors in the Court's prior Opinion. The Court addresses those arguments in turn before taking up Plaintiff's alternative request to certify that Opinion for appeal.

   A.   Reconsideration

      1.   *Iterations of Restrictions at the Capitol*

Mahoney first contends that the Court neglected to address his position that his free-speech claim "required evaluation of the restrictions on speech on the Capitol Grounds that were in place at the time he filed this lawsuit, in addition to those that are currently in place." ECF No. 26 (Mot. for Recon.) at 4–5. In other words, the Court should have looked at the regulations as they existed on August 31, 2021 — the date he filed his initial Complaint — in addition to (or instead of) the regulations as they exist today, which are the same regulations that were in place on September 11, the day of his prayer vigil. This contention does not aid Mahoney's case.

A little background is in order. As the Court explained in its prior Opinion, when Plaintiff filed this lawsuit on August 31, "Area 1, which abuts the Capitol building to the west and includes the West Front Lawn, remained closed to demonstrations of any size." Mahoney I, 2022 WL 523009, at *2 (citing Am. Compl., ¶¶ 36, 47). On September 2, 2021, however — "still over a week before his proposed vigil — the Board opened Areas 1 and 8–11, including the

West Front Lawn, to demonstration activity for groups of 19 or fewer." Id. at *3 (citing Am. Compl., ¶ 50). Those Areas nonetheless remained closed to demonstration activity involving 20 or more people. Id. (citing Am. Compl., ¶ 51). This is still the case today.

Against that backdrop, the Court did not err in considering the later regulations instead of the August ones given the remedies available to Mahoney in this lawsuit. The Court previously concluded that he may not pursue damages on his remaining claims — a conclusion that he does not challenge. Id. at *14; see Mot. for Recon. at 4–6. Rather, he may obtain only "declaratory and injunctive relief on his remaining claims as the suit proceeds." Mahoney I, 2022 WL 523009, at *14. In his Amended Complaint — which was filed on November 4, 2021, and is the operative pleading in this case — he seeks an injunction involving only future prayer vigils. In other words, Plaintiff requests an injunction requiring Defendants "to permit [him] to conduct a prayer vigil involving more than twenty (20) people on the Western Front Lawn in the future and to not interfere with such expressive activity." Am. Compl. at 27. Given this request, it would make little sense to evaluate the restrictions that were in place on August 31 instead of those currently in effect. Indeed, were the Court to agree with Plaintiff and rule in his favor on the free-speech claim, it is not clear what there would be to enjoin, as the August 31 ban on demonstration activity on the West Front Lawn is no longer live. Rather, the only course is to do what the Court did in its prior Opinion: evaluate the restrictions that are currently in effect — which, it should be noted, are the same ones that have been in place since September 2 — and that continue to prevent him from hosting large prayer vigils on the West Front Lawn.

To the extent that Plaintiff believes that the Court should look to his initial Complaint — and apparently ignore his superseding Amended Complaint — which sought an injunction requiring Defendants to permit him to demonstrate on the West Front Lawn on September 11,

that request is moot. See ECF No. 1 (Complaint) at 16. Of course, September 11, 2021, had come and gone by the time that the Government filed its Motion to Dismiss, and the restrictions Mahoney initially challenged were no longer in place. Given that and the relief available to Plaintiff in this action, it was "impossible for [the] [C]ourt to grant 'any effectual relief whatever' to the prevailing party" on a challenge to a previous iteration of the restrictions. See Knox v. Serv. Emps. Int'l Union, 567 U.S. 298, 307 (2012) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)).

Further, inasmuch as Mahoney argues that the voluntary-cessation doctrine requires the Court to evaluate the old restrictions, he is mistaken. See Mot. for Recon. at 5. Because the Board implemented the restrictions at issue in this case "[i]n response to the events of January 6, 2021," and the restrictions have been progressively eased since then, see Am. Compl., ¶ 35; id., ¶¶ 36–37, 50, there is no reasonable expectation that the old restrictions will be reinstated absent a change in security conditions at the Capitol. While a novel security threat always remains a possibility, it would be premature for the Court to evaluate the potential return of narrower restrictions on speech at the Capitol in response to a future, hypothetical threat, which may implicate different government interests. Instead, should such a contingency come to pass, Mahoney could bring a new challenge to any newly implemented restrictions that prevent him from demonstrating in his desired manner, and a court could then evaluate such a challenge based on the particular restrictions and conditions present at that time.

Last, before moving on, the Court notes briefly that, even aside from the issue of remedies, Mahoney's argument on this score makes little common sense. Neither his initial Complaint nor his Amended Complaint alleged that he wished to hold a prayer vigil (of any size) on the West Front Lawn before September 11, 2021. Indeed, the subject of his ire in this case

has always been the Government's summer 2021 denial of his permit for September 11. See Compl., ¶¶ 1, 20; Am. Compl., ¶¶ 2, 45–48. Yet the restrictions that were in effect when he filed this lawsuit on August 31 had no effect whatsoever on his ability to conduct such a prayer vigil because they were not operative by September 11. In other words, the restrictions that caused any alleged injury had to be those in effect on September 11 (and which continue to be in effect today), and it was thus eminently reasonable for the Court to evaluate only whether those rules violated the First Amendment.

### 2. Facial Free-Speech Challenge

Plaintiff's next contention also involves his facial free-speech challenge. Here, he asserts that the Court "failed to address Rev. Mahoney's argument that, because the Government bears the burden of demonstrating that its restrictions on speech are narrowly tailored, it would be improper to dismiss Rev. Mahoney's free speech claim at the Rule 12(b)(6) stage," and that the Court instead "found facts against Rev. Mahoney." Mot. for Recon. at 6–7.

Plaintiff first takes issue with the Court's supposed failure to acknowledge that the Government must demonstrate narrow tailoring. Id. at 7. What Mahoney elides, however, is that the Court agreed with him — both in its initial Opinion and now — as to the general legal standard for assessing a free-speech challenge under intermediate scrutiny. See Mahoney I, 2022 WL 523009, at *4–6. In light of that reality, it is not clear why the Court's not specifically quoting his preferred language to capture that standard requires reconsideration. For instance, Mahoney makes much of the fact that the Court "did not discuss the showings that Edwards [v. D.C., 755 F.3d 996 (D.C. Cir. 2014)] requires" in assessing narrow tailoring. See Mot. for Recon. at 7–8. But the Court cited Edwards for its description of the applicable standard, Mahoney I, 2022 WL 523009, at *4 (citing Edwards, 755 F.3d at 1001–02), and it

7

acknowledged, consistent with that case, that the Government's asserted interest must be more than abstract for it to prevail. Id. at *5; see Edwards, 755 F.3d at 1003. At any rate, regardless of the precise language the Court cited in setting out the appropriate framework, its analysis demonstrates that it applied the correct legal test, even if Plaintiff disagrees with its ultimate conclusion. Mahoney I, 2022 WL 523009, at *4–6.

Mahoney resists this determination, adding that the Court "made numerous findings of fact against" him in rejecting his facial free-speech challenge. See Mot. for Recon. at 8. The Court is once again not persuaded. While it need not belabor each allegedly erroneous factual finding identified by Plaintiff, it will address his main arguments. See Singh, 383 F. Supp. 2d at 101 ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (internal quotation marks omitted).

First, Mahoney takes issue with the Court's not relying on his assertion that the Government opened the West Front Lawn to demonstrations of 19 or fewer only in response to his lawsuit. See Mot. for Recon. at 8–9. The only such reference in the Amended Complaint, however, states, "On information and belief, the Board opened these areas in response to Rev. Mahoney's lawsuit and in an effort to cure the constitutional infirmities in the [Traffic Regulations]." Am. Compl., ¶ 50. The D.C. Circuit has made clear that a plaintiff may plead upon information and belief "only when 'the necessary information lies within the defendant's control,' and the allegations are 'accompanied by a statement of the facts upon which the allegations are based.'" United States ex rel. Cimino v. Int'l Bus. Machines Corp., 3 F.4th 412, 424 (D.C. Cir. 2021) (quoting Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)); see also, e.g., Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013) (allegation

8

made upon information and belief need not be taken as true when allegation is conclusory).  As Plaintiff's conclusory sentence is accompanied by essentially no facts upon which the allegation is based — and he did not even attempt to satisfy the standard for pleading upon information and belief in his Opposition — the Court was not required to accept it as true.  See Kowal, 16 F.3d at 1279 n.3 ("standards for pleadings on information and belief must be construed" so as to "prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs") (internal quotation marks and citations omitted).

Second, Mahoney contests the Court's characterization of the Government's interest in promoting security around the Capitol in 2021 and especially the comparison of that interest *vis-à-vis* the Government's interest in Lederman v. United States, 291 F.3d 36 (D.C. Cir. 2002).  Specifically, he asserts that the security posture is not "the type of fact about which [] the Court may take judicial notice." Mot. for Recon. at 9.  Not so.  In its Opinion, the Court relied on the Amended Complaint itself for the uncontroversial proposition that "the Capitol Grounds closures at issue in this case were implemented in response to the unprecedented violence on January 6, 2021."  Mahoney I, 2022 WL 523009, at *5 (citing Am. Compl., ¶¶ 35–36).  Although the Court took judicial notice of the terrorist attacks of September 11, 2001, and the subsequent changes to the Capitol Visitor Center, id. (citing Architect of the Capitol, Capitol Visitor Center, https://bit.ly/3ujvMOo), doing so was well within its discretion because the noticed facts are "not subject to reasonable dispute."  Hurd v. D.C., 864 F.3d 671, 686 (D.C. Cir. 2017) (quoting Fed. R. Evid. 201(b)).  Indeed, it is not lost on the Court that while Plaintiff complains of its inappropriately taking judicial notice of facts outside the Complaint, the Court meanwhile declined to dismiss two of his claims after rejecting Defendants' invitation to take judicial notice of a declaration they submitted, even though the Court had no reason to doubt its veracity.

9

Mahoney I, 2022 WL 523009, at *8–9.  In other words, rather than improperly relying on disputable facts not alleged, the Court took pains to cabin its scope to the allegations in the Amended Complaint and to adhere to the limits of taking judicial notice, all to Mahoney's benefit.  Id.

Last, Plaintiff contends that the Court neglected to address his "argument that the fact that Board recently allowed three other similar events . . . to go forward on 'closed' areas of the Capitol Grounds undermines the Government's assertion that demonstration activity in groups of twenty or more on Capitol Square presents a security threat."  Mot. for Recon. at 10.  The Court did not "fail[] to address" such an argument, however, because Mahoney did not previously advance it.  The lone place where he claims to have asserted as much is on pages 29–30 of his Opposition, id. at 11 — which are part of a section addressing why the Regulations, as applied to Mahoney, "impermissibly discriminated against [him] on the basis of speaker identity."  ECF No. 18 (Pl. Opp.) at 27.  The challenge thus had nothing to do with his facial free-speech argument that the regulations are not narrowly tailored.  In addition, it appeared to be a different claim on the merits than what he now urges.  While Plaintiff previously contended that a policy of not applying the regulations to Members of Congress "could not satisfy strict scrutiny," id. at 29, he now asserts that because the Board permitted several demonstrations sponsored by Members, the regulations are necessarily not narrowly tailored on their face.  See Mot. for Recon. at 10–11.  In sum, this basis for reconsideration cannot prevail.

       3.   *Selective Enforcement*

Next up is Plaintiff's argument that the Court "misapprehended the full scope of [his] as-applied free speech claim."  Id. at 11.  Here, Mahoney takes issue with the Court's addressing what he believes to be an as-applied free-speech claim under the selective-enforcement

framework. Id. He also contends that, "in light of the uncertainty over the question of whether the Free Speech Clause or Equal Protection Clause applies, Rev. Mahoney respectfully suggests that the Court should not dismiss his free speech claim." Id.

There is no need to reconsider this issue. The Court expressly addressed the argument in its previous Opinion, explaining that although "the D.C. Circuit does not appear to have conclusively weighed in on which doctrinal framework governs claims of this sort," "[t]he Circuit's limited pronouncements . . . suggest that Plaintiffs' claim is better considered within the selective-enforcement framework of the Fifth Amendment than within that for as-applied First Amendment viewpoint-discrimination challenges." Mahoney I, 2022 WL 523009, at *7 (quoting Frederick Douglass Found., Inc. v. D.C., 531 F. Supp. 3d 316, 328 (D.D.C. 2021), then Frederick Douglass Found., Inc. v. D.C., No. 20-3346, 2021 WL 3912119, at *4 (D.D.C. Sept. 1, 2021)). In the Court's prior Opinions in Frederick Douglass Foundation, moreover, it addressed at length the proper framework for addressing such claims. See Frederick Douglass Found., Inc., 531 F. Supp. 3d at 326–28; Frederick Douglass Found., Inc., 2021 WL 3912119, at *4–6. While Plaintiff may not agree with that framing, he does not provide any compelling reason to reconsider the Court's approach, and, in any event, he previously "admit[ted] that 'whether the Court analyzes Government's actions here under the rubric of free speech or equal protection, the outcome is the same." Mahoney I, 2022 WL 523009, at *7 (quoting Pl. Opp. at 24 n.7).

    4. *No-Demonstration Zone*

Mahoney next contends that the Court "failed to address [his] separate argument that, even putting aside the Board's unlawful additional restrictions on speech that it imposed in the wake of January 6, 2021, and its consequent denial of his permit application, the Demonstration Map's 'no-demonstration zone' around the Capitol Building violates the Free Speech Clause

under Lederman." Mot. for Recon. at 12.  He thus argues that the longstanding restriction on demonstrations of any size in certain areas immediately abutting the Capitol is unconstitutional, and that the Court should have addressed this claim in its previous Opinion.  The Government, for its part, submits only that Mahoney did not previously raise the argument, and that the Court thus did not err in declining to address it.  See ECF No. 29 (Gov. Opp.) at 8.

      While the issue is a close one, the Court will reconsider this issue and reinstate Plaintiff's free-speech count only insofar as it alleges that the restrictions involving the so-called no-demonstration zone are facially unconstitutional.  With the benefit of additional briefing on the issue — and mindful that it "must grant plaintiff the benefit of all inferences that can be derived from the facts alleged" at the motion-to-dismiss stage, Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted) — the Court is now convinced that Mahoney adequately alleged such a claim in his Amended Complaint.  There, he made several references to the no-demonstration zone and noted that, in addition to his primary goal of hosting a large prayer vigil on the West Front Lawn, "Rev. Mahoney also desires to engage in prayerful expressive activity involving fewer than twenty (20) people on the Eastern Plaza in front of the steps to the Senate and the House of Representatives.  Because, however, that area is designated 'No Demonstration Activity' on the Demonstration Area Map, he is prohibited from doing so." Am. Compl., ¶ 53; see id., ¶¶ 57–58.  Notwithstanding that allegation, Plaintiff treated it as an afterthought at best in his Opposition, and the Government thus reasonably never mentioned the issue.  See Pl. Opp. at 17–18.  In a final reckoning, however, the Court acknowledges that the Amended Complaint contains sufficient allegations about the no-demonstration zone such that it should be permitted to proceed.

This is particularly so given that the Government has provided no persuasive reason why the claim should be dismissed. Indeed, as mentioned, Defendants have never addressed the merits of the issue, either in their original briefing or in this Opposition. The Court, consequently, will allow Plaintiff's free-speech challenge to advance to discovery insofar as it alleges that the restrictions creating the no-demonstration zone are facially unconstitutional. Because the Government has never weighed in on this question, however, it is free to bring a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), should it so choose, or it may wait for summary judgment. In any event, discovery will be limited to his facial claim involving the no-demonstration zone, as his other First Amendment causes of action remain dismissed.

5. *Due Process*

Mahoney's final argument in support of reconsideration involves his due-process challenge. Specifically, he contends that the Court (1) "failed to apprehend that Rev. Mahoney's due process claim alleged that the Board regulates speech — not just permit issuance, but speech in groups of fewer than twenty people, for whom no permit is required — through secret Board Orders that are not published or otherwise made known to the general public"; and (2) "appears to have misinterpreted the relief Rev. Mahoney sought on his due process claim." Mot. for Recon. at 12–13. Those contentions do not alter the outcome.

The Court already considered and rejected Plaintiff's first argument. In its prior Opinion, it reviewed the Traffic Regulations and explained that their "requirements for demonstrators are clear." Mahoney I, 2022 WL 523009, at *13. To the extent that Mahoney believes that such conclusion does not apply to orders of the Board, the Court went on to explain that, "[c]onsistent with the Traffic Regulations, an applicant 'need only ask which areas are available for the

13

proposed demonstration' to understand whether her large demonstration will be allowed to go forward." Id. at *14 (citations omitted). Indeed, in line with that conclusion, the Government reiterated in this Opposition that, "[a]s Plaintiff well knows, all he (or any other citizen) need do is contact the Special Events Section of the U.S. Capitol Police for information about which areas of the Capitol Grounds are available for demonstration activity." Gov. Opp. at 10; see id. ("The information is publicly available, even though the Board's orders may not always be publicly released."). Although the Court did not explicitly state as much in its prior Opinion, the same result obtains with regard to smaller groups who wish to demonstrate in a closed area. While it is not absurd for Plaintiff to seek public posting of all Board Orders — and the Board may deem it wise to consider such a policy going forward — Mahoney has not demonstrated that declining to do so, and instead making the Orders publicly available to any interested person, runs afoul of the Constitution. As the Court previously explained, the Board's current practice withstands Plaintiff's due-process challenge because a "reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, would have fair warning of what the regulations require." Mahoney I, 2022 WL 523009, at *14 (quoting Bellion Spirits, LLC v. United States, 7 F.4th 1201, 1214 (D.C. Cir. 2021)).

As for Mahoney's second due-process argument, it is unclear why the Court would now revisit the relief he sought, as it already dismissed the claim. See Mot. for Recon. at 13 ("Second, the MTD Opinion appears to have misinterpreted the relief Rev. Mahoney sought on his due process claim."). To the extent that Plaintiff seeks to require the Board to "publish where speech is being prohibited," id., however, the Court has already explained — in its prior Opinion and again here — why the Government has complied with that obligation. While Mahoney may

14

nitpick whether the Board Orders are merely publicly available, as opposed to published, he has not explained why the distinction is constitutionally relevant. Id. In any event, the Court has already amply set forth why the Board's system of publishing the Traffic Regulations and making Orders publicly available upon request survives constitutional scrutiny.

B. Certification

Having rejected all but one of Plaintiff's requests to reconsider its prior Opinion, the Court takes up his alternative entreaty to certify the remainder of that Opinion and accompanying Order for immediate appeal under 28 U.S.C. § 1292(b). This request also founders.

The governing statute, 28 U.S.C. § 1292(b), provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

"This provision represents a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment,' and provides 'an avenue for review' of certain nonfinal orders 'in appropriate cases.'" In re Rail Freight Fuel Surcharge Antitrust Litig., No. 11-1049, 2021 WL 2433737, at *4 (D.D.C. June 15, 2021) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978); then Van Cauwenberghe v. Biard, 486 U.S. 517, 530 (1988)). "Interlocutory appeal is only appropriate if all three requirements [listed in § 1292(b)] are satisfied." Id. (citing Swint v. Chambers Country Comm'n, 514 U.S. 35, 46 (1995)). Interlocutory appeals are "rarely allowed," and "the movant 'bears the burden of showing that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" Virtual Def. & Dev. Int'l, Inc. v. Republic of

Moldova, 133 F. Supp. 2d 9, 22 (D.D.C. 2001) (quoting First American Corp. v. Al-Nahyan, 948 F. Supp. 1107 (D.D.C. 1996)).

As a result, "the district court may certify an order for immediate appeal if it makes the following three findings: (1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance [the ultimate termination of] the litigation." In re Rail Freight Fuel Surcharge Antitrust Litig., 2021 WL 2433737, at *4 (internal quotation marks and citations omitted, emphasis added). "Even assuming that [Mahoney is] correct on two of these points — *viz.*, that the Opinion[] involve[s] a controlling question of law and offer[s] substantial ground for a difference of opinion — [he] do[es] not cross the goal line here." Montgomery v. Internal Revenue Serv., No. 17-918, 2019 WL 13082009, at *1 (D.D.C. Feb. 6, 2019). That is because an immediate appeal would not "materially advance the ultimate termination of this litigation." 28 U.S.C. § 1292(b).

On the contrary, permitting an interlocutory appeal would create piecemeal litigation and likely lead to multiple appeals, which may well delay the conclusion of this litigation. While the Court granted Defendants' Motion to Dismiss as to some of Mahoney's claims, it declined to dismiss others, reinstated one claim here, and is allowing them to proceed to discovery. If the Court were to certify an immediate appeal now as to the dismissed counts, that would result in multiple appeals since there is a strong possibility of a second appeal by one side (or both) after the Court has adjudicated the remaining counts. Those separate appeals, moreover, would be in addition to Mahoney's already-filed appeal of this Court's ruling on his Motion for Preliminary Injunction in a related case involving many of the same issues. See No. 22-5094 (D.C. Cir. Apr. 15, 2022). Such an outcome is plainly one that "the Circuit desires to avoid." Montgomery,

16

2019 WL 13082009, at *1; see also, e.g., Sai v. Dep't of Homeland Sec., 99 F. Supp. 3d 50, 59 (D.D.C. 2015) ("Because certification runs counter to the general policy against piecemeal appeals, this process is to be used sparingly."); Howard v. Office of Chief Admin. Officer of U.S. House of Representatives, 840 F. Supp. 2d 52, 55 (D.D.C. 2012) (quoting Tolson v. United States, 732 F.2d 998, 1002 (D.C. Cir. 1984)) ("It 'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'").  No certification will thus issue.

* * *

With much ink already spilled on this dispute, Plaintiff's remaining claims will now move forward to discovery.  As the record develops and arguments are updated and refined at the summary-judgment stage, the Court will also be mindful of the D.C. Circuit's recent decision affirming its denial of Mahoney's Motion for Preliminary Injunction in his related case.  While the Court of Appeals' *per curiam* judgment did not address the merits of Plaintiff's challenges, Judge Patricia Millett did so in a concurrence.  More specifically, she stated, "As to the first [preliminary-injunction] factor, on the limited record before us, I am persuaded by Mahoney's argument that the government's conduct violates the First Amendment's content-neutrality requirement."  No. 22-5094, Judgment at 1 (D.C. Cir. Apr. 15, 2022) (Millett, J., concurring in the judgment).  Relying on a declaration submitted by the Government, she found it constitutionally suspect that the Board "applies preferential speech treatment not just to demonstrations organized and conducted by Members of Congress themselves, but also to any speech events 'sponsored' or 'advocated' for by a Member of Congress."  Id. at 2 (quoting Declaration of Scott Grossi).  Judge Millett also noted that, in her view, "the district court misstepped in treating Mahoney's First Amendment claim as controlled by the district court's

17

earlier opinion in Mahoney's September 11 prayer vigil case" — *i.e.*, the opinion now at issue. Id. at 3 (citing Mahoney II, 2022 WL 1014791, at *3).

Of course, Judge Millett's statements came in a different case, on a different record, and at a different procedural stage. She did not address a number of Plaintiff's other claims and arguments, and it is somewhat unclear whether her position applied to the First Amendment claim, the Fifth Amendment selective-enforcement count, or both. The Court will nonetheless be mindful of her words as this case progresses. For now, however, it would be premature to attempt to map out precisely how to apply the concurrence to this case; rather, the better course is to address the specific arguments raised by Mahoney in his Motion for Reconsideration, which the Court has done.

## IV.   Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's Motion for Reconsideration. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: April 21, 2022