UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REVEREND PATRICK J. MAHONEY, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNITED STATES CAPITOL )<br>POLICE BOARD, *et al.*, )<br><br>Defendants. )<br> ) | Civil Action No. 21-2314 (JEB) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS,
OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia (Civil Division)
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2562

*Counsel for Defendants*

Dated:   December 21, 2022

The United States Capitol Police Board (the "Capitol Police Board" or the "Board"), and others,[1] respectfully submit this Memorandum of Law in support of Defendants' motion to dismiss, for Judgment on the Pleadings, or for Summary Judgment in response to the Third Amended Complaint ("TAC") filed by Reverend Patrick J. Mahoney ("Plaintiff" or "Mahoney"). ECF No. 65-1.  The claims should be dismissed pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1), (b)(6), 12(c), or 56(c).

## INTRODUCTION

Defendants respectfully submit this dispositive motion in response to Plaintiff's Third Amended Complaint.  There is no doubt that the Court is familiar with the relevant facts having penned an opinion denying Plaintiff's motion seeking injunctive relief, a previous opinion dismissing most of Plaintiff's claims, and yet another denying Plaintiff's motion for reconsideration in part.  Here, Defendants move to dismiss, for judgment on the pleadings, or for summary judgment in the alternative.  First, Plaintiff alleges that jurisdiction exists under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., and 28 U.S.C. § 1331 only, but neither of these constitutes a waiver of sovereign immunity.  Nor can the Plaintiff rely on the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., because Congress is not an "agency" under that Act.  Secondly, Plaintiff's claims are either moot or not justiciable because he either refers to denials on dates that have either all passed or are in the future or he has not responded to the Board's attempts to engage him.  Third, the Law of the Case doctrine prevents Plaintiff from

---

[1]     Plaintiff has sued the following individual members of the Capitol Police Board in their official capacities only:  Karen H. Gibson, U.S. Senate Sergeant at Arms and Doorkeeper; William J. Walker, U.S. House of Representatives Sergeant at Arms; J. Brett Blanton, Architect of the Capitol; and J. Thomas Manger, Chief of Police, U.S. Capitol Police.  It does not appear that these additional parties are necessary to this action given that Plaintiff is seeking declaratory relief against the Board.

raising any claims that this Court has already adjudicated in two previous opinions.  Fourth, dismissal is proper under Rule 12 b (6) or alternatively Rule 56, with Lt. Grossi's declarations as well as "other sources" that are judicially noticeable.  Finally, Defendants respectfully incorporate by reference their first motion to dismiss into this one.

## **BACKGROUND**

### a.   **Procedural History**

Having issued three opinions in two separate cases as part of the iteration of Mahoney cases, this Court is already familiar with the relevant facts of this case at a granular level. Defendants previously moved to dismiss, *see* ECF No. 16, and the Court adjudicated it.  *See* ECF No. 25 ("*Mahoney I*").[2]  At that time, Plaintiff sought a permit to hold a prayer vigil on the West Front Lawn of the Capitol on September 11, 2021, but his request was denied.  *See Mahoney I* at 1-2.  He challenged the regulations governing the decision to deny his request facially and their application to "as applied" him.  *See* 42 U.S.C. § 2000bb-1(a)–(b).  Plaintiff filed yet another separate action wherein he sought injunctive relief related to a purported Good Friday prayer vigil, which the Court also denied; and subsequently dismissed the case.  *See Mahoney v. United States Capitol Police Bd*., Civ. No. 22-760 (JEB), 2022 U.S. Dist. Lexis 63311 (D.D.C. 2022) ("Mahoney II"), *aff'd*, Civ. A. No. 22-5094 (D.C. Cir. 2022) (Mahoney failed to "demonstrate[] that he will suffer irreparable harm" because he is allowed to hold a prayer vigil in his desired location and the only constraint is on the number of persons who may attend that vigil. "He

---

[2]    On September 9, 2021, the Court held a telephonic hearing on Plaintiff's Motion for Preliminary Injunction requesting an order allowing him to hold a prayer vigil with more than 19 people on the West Front Lawn, where such demonstrations are prohibited, on September 11. *See* ECF Nos. 2, 4.  The Court's denied the motion.  *See* Minute Order entered on September 9, 2021.  The denial of injunctive relief will be discussed further elsewhere in this Memorandum.

makes no claim that he intends to involve 25 people as participants in his vigil, and indeed, he

has provided little support for his expectation that the vigil will attract a crowd larger than the

19-person limit. Nor does he purport to sue on behalf of a prospective attendee's right to be

present at the vigil."). By contrast, the D.C. Circuit noted that "the Government's security

concern in limiting in advance the number of persons involved in demonstration activity in close

proximity to the Capitol, and not being subject to last minute requirements or adjustments, is a

weighty one."

The Court denied the facial challenge concluding that "[t]he Traffic Regulations []

implement facially constitutional time, place, and manner restrictions on speech" and a "narrow,

objective, and definite" prior restraint. *See Mahoney I* at 8-15.[3] In *Mahoney I*, the Court also

held that Plaintiff had "plausibly alleged that the Board enforced the Traffic Regulations against

him differently than against others similarly situated." *Mahoney I* at 18. Plaintiff alleged that

the "similarly situated" "others" were events "sponsored or requested by Members of Congress."

*Id*. at 19. The three comparator events were either "sponsored" or "attended" by Members of

Congress. *See id*. (citing ECF No. 10-1, Declaration of Scott Grossi at 4 ¶¶ 18-19 ("Grossi

Decl.")).[4] Statutorily, Members of Congress are exempt because of their constitutional duties.

*See* Grossi Decl. at 4-5 ¶ 21. Notably, while the Court was able to rely on the Grossi Decl. to

---

[3] Plaintiff moved for reconsideration, *see* ECF No. 26, and the Court permitted Plaintiff to proceed with an "afterthought" claim that regulations prohibiting him from gathering in the "no demonstration activity" areas of the Capitol grounds. *See* ECF 36 at 11-13 ("*Mahoney III*").

[4] "[A]fter Congress adjourned for its August 2021 recess, the Board allowed House Representative Cori Bush to hold a demonstration – without requiring her to obtain a permit – on the Eastern steps in front of the House of Representatives from approximately June 30 – August 3, 2021." TAC at 15 ¶ 41; *see also* Grossi Decl. at 5 ¶ 22.

deny Plaintiff injunctive relief because the comparator events were congressional events not subject to the traffic regulations, the Court was not able to rely on this same information because "it may weigh only the facts alleged in the complaint" at the motion to dismiss stage.  *See Mahoney I* at 19.  The Court added that "Defendants provide[d] no source other than Grossi's disputed declaration to support their contention about the identity of the sponsors of the comparator demonstrations."  *Id*. at 20.

      **b.**     **Plaintiff's Third Amended Complaint**

Plaintiff commenced this action "under the First, Fifth, and Fourteenth Amendments to the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331."  TAC at 5 ¶ 11.  Plaintiff alleges that the "Board admits that it allowed these events to go forward because "[m]embers of Congress and their staffs do not need a permit to hold their events near the Capitol Building and may request that permit applications [of others] be approved."  TAC at 15 ¶ 42.  According to Plaintiff, "[u]nder the Board's interpretation of the Traffic Regulations . . . members of Congress (and those whose speech they favor) are not subject to the limitations on demonstration activity created by the Traffic Regulations."  TAC at 14 ¶ 45.  "The Board does not give ordinary Americans, like Reverend Mahoney, this preferential treatment."  *Id*.  Plaintiff generally alleges that he applied for permits for prayer vigils for September 11, 2021 and April 7, 2022, which were denied, but he went ahead with his prayer plans with his wife on September 11, 2021, and three others on April 7, 2022.  *See generally* TAC.

Plaintiff alleges that his applications for vigil permits on September 10, 2022 and October 9, 2022, were denied by the Board "based on its then-current restrictions on speech," which led him to seek injunctive relief again.  *See* TAC at 23 ¶ 76.  Plaintiff further alleges that the Board

again modified its restriction because of his motion seeking injunctive relief.  *Id*.[5]  "Specifically, the Board imposed: (1) a 250-person limitation on group size on the West Front Lawn (Area 1) and (2) a 150-person limitation on group size on the Eastern Front (Areas 8-11), with the caveat that Areas 9 and 10 will remain closed to permitted demonstration activity when either the House of Representatives or the Senate are in session."  *Id*.  Plaintiff alleges that the Board granted his September 10, 2022 application and, according to him, forty-two people attended, but the Board denied the application for October 9, 2022, and Plaintiff withdrew it.  *Id*. at ¶ 79.

Regarding the "no demonstration zones," Plaintiff alleges that he "desires" to have prayer vigil there, alone or with his wife, on Good Friday 2023 "and every Good Friday or every year for the foreseeable future."  TAC at 23-24 ¶ 81.  He further alleges that he "intends" to have a prayer vigil for twenty of more people on the West Front lawn of the Capitol on January 6, 2023, "and he will be submitting a permit application for this event in the near future."  TAC 24 ¶ 83.  He also "desires" to have a demonstration on the West Front Lawn, on June 24, 2023, involving over 5000 people to commemorate the one-year anniversary of the *Dobbs* Supreme Court decision.  *See* TAC at 26 ¶ 85.

In light of the foregoing, Plaintiff's purported first cause of action is that the Traffic regulations, permitting scheme, and temporary closures are facially invalid under the First Amendment.  *See* TAC at 26-37 ¶¶ 96-127.  131.136.  In his second cause of action, Plaintiff alleges that "[t]he Traffic Regulations, the Board's permitting scheme covering the Capitol Grounds, the Board's temporary closures of the Capitol Grounds, and the Board's acts and practices as alleged herein violate [his] right to assembly and association under the First

---

[5]       The D.C. Circuit affirmed the Court's denial of injunctive relief in *Mahoney II* on April 15, 2022, so it is difficult to see how the pendency of Plaintiff's Motion for Preliminary Injunction in this case motivated the Board.

Amendment for all the same reasons they violate [his] right to free speech under the First

Amendment." *Id*. at 39 ¶ 138.  Plaintiff's third cause of action is that the same facts constitute a

violation of his Due Process and Equal Protection rights under the Fifth Amendment, *id*. at 40-46

¶¶ 144-69.  Plaintiff also seeks declaratory and injunctive relief.

       **c.**     **Plaintiff's Current and Pending Applications**

As the Court has already made clear, because the relief Plaintiff is seeking is for

declaratory and injunctive relief "the only course is to . . .  evaluate the restrictions that are

currently in effect." *Mahoney III* at 5.  Currently, as of July 2022, the only relevant restrictions

that remain in place are "(1) a 250-person limitation on group size on the West Front Lawn (Area

1) and (2) a 150-person limitation on group size on the Eastern Front (Areas 8-11), with the

caveat that Areas 9 and 10 will remain closed to permitted demonstration activity when either the

House of Representatives or the Senate are in session."  TAC at 23 ¶ 77.   On November 22,

2022, Plaintiff submitted an application for a vigil on January 20, 2023, for Area 12 and is

expected to attract 250 participants.  *See* Exhibit A at 7 ¶ 30(a), Second Declaration of Lt. Scott

Grossi ("2d Grossi Decl.").  The "[a]pplication information was reviewed with Mahoney

[during] the week of December 12, 2022 and the Special Events Section is awaiting confirmation

from Mahoney that event information is correct prior to submitting the event file for approval."

*Id*.

On July 26, 2022, Plaintiff submitted an application for a vigil on April 7, 2023 or Good

Friday in Area 1 (West Front, Lower West Terrace) that is expected to attract 50 demonstrators.

2d Grossi Decl. at 7 ¶ 30(b).  The Special Events Section made contact with Mahoney on

November 21, 2022 and November 23, 2022, to discuss application information and, on both

occurrences, Mahoney stated he did not have time to coordinate this event because he was busy

planning a separate event.  *See id*.  Subsequently, the Special Events Section again called

Mahoney on December 6, 2022, and December 16, 2022, and left voicemails.  *Id*.  Emails were

then sent for Mahoney to contact the Special Events Section to no avail.  *Id*.  Finally, on June 27,

2022, Plaintiff has also submitted an application for June 24, 2023, the first anniversary of the

*Dobbs* decision in Area 15 that is expected to attract 5,000 demonstrators. *See id*. at 7 ¶ 30(c). On

November 23, 2022, Mahoney requested planning for this event to begin sometime in February –

March  of 2023.  *Id*.

## **STANDARD OF REVIEW**

### a.      **Rule 12(b)(1)**

Rule 12(b)(1) provides that a federal court must dismiss a case when it lacks subject matter

jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Generally, "'[b]efore a court may address the merits of

a complaint, it must assure that it has jurisdiction to entertain the claims.'"  *Cornish v. Dudas*, 715

F. Supp. 2d 56, 60 (D.D.C. 2010) (quoting *Marshall v. Honeywell Tech. Solutions, Inc.*, 675 F.

Supp. 2d 22, 24 (D.D.C. 2009)).   It is the plaintiff's burden to demonstrate subject matter

jurisdiction.  *Shulter v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008).  If the plaintiff cannot

meet his burden, the court must dismiss the action.  *Steel Co. v. Citizens for a Better Env't.*, 523

U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 74 U.S. 506 (1868)).  In considering a motion to

dismiss for lack of subject matter jurisdiction, a court "'treat[s] the complaint's factual allegations

as true'" and "'grant[s] plaintiff 'the benefit of all inferences that can be derived from the facts

alleged.'"  *Nat'l Whistleblower Ctr. v. HHS*, 839 F. Supp. 2d 40, 44 (D.D.C. 2012) (quoting

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation

omitted)).  However, "[b]ecause subject matter jurisdiction focuses on the court's power to hear

the claim . . . the court must give the plaintiff's factual allegations closer scrutiny when resolving

a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion[.]" *Aref v. Holder*, 774 F. Supp. 2d 147, 159 (D.D.C. 2011). "Subject matter jurisdiction may be raised at any time, even by the court *sua sponte*." *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6, 15 (D.D.C. 2011).

**b.    Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "In order to survive a motion to dismiss under Rule 12(b)(6), the allegations stated in the contested portion of the plaintiff's complaint 'must be enough to raise a right to relief above the speculative level[.]'" *Demery v. Montgomery County,* 602 F. Supp. 2d 206, 212 (D.D.C. 2009) (quoting *Twombly*, 550 U.S. at 555). If a plaintiff does not assert sufficient facts to support her claim, that claim must be dismissed. *Demery*, 602 F. Supp. 2d at 212.

**c.    Rule 56(c)**

Defendant also moves for summary judgment under Federal Rule of Civil Procedure 56, which "is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 154 (D.D.C. 2007) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material fact. *Id.* In deciding whether a genuine issue of material fact exists, the court must "accept all evidence and make all inferences in the non-movant's

favor." *Id.* "A non-moving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* That is, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## ARGUMENT

### a.   Sovereign Immunity Bars Plaintiff's Claims

According to Plaintiff, "[t]his action arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution and the Declaratory Judgment Act ["DJA"], 28 U.S.C. §§ 2201 and 2202.  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331." TAC at 5 ¶ 11.  Plaintiff cannot bring an action for declaratory and injunctive relief directly under the First, Fifth, and Fourteenth Amendment to the Constitution.  Moreover, "the DJA is a not an independent source of federal jurisdiction." *C & E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002).  [F]ederal courts, being courts of limited jurisdiction, must assure themselves of jurisdiction over any controversy they hear[.]" *See Noel Canning v. Nat'l Lab. Rel. Bd.*, 705 F.3d 490, 496 (D.C. Cir. 2013).

It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  It is similarly established that, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Further, any waiver of sovereign immunity must be "unambiguous." *Id.*; *see also Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (waiver of the government's traditional immunity must be explicit and is strictly construed).  Moreover, "[s]overeign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475.  As such, absent clear Congressional consent to entertain a

constitutional claim against the United States, its agencies or employees, a District Court lacks authority to grant relief.  *United States v. Testan*, 424 U.S. 392, 399 (1976); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction and the law presumes that 'a cause lies outside this limited jurisdiction.'").

The United States' sovereign immunity extends to governmental agencies and to their employees where the employees are sued in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir. 1997) ("no cause of action for damages for constitutional violations-whether called a *Bivens* action or not-is to be implied against government agencies").  This is because a suit against government officials in [their] official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects . . . a suit against the entity." *Graham*, 473 U.S. at 165-66; *see also Perkins v. Ashcroft*, 275 Fed. Appx. 17 (D.C. Cir. 2008) ("to the extent appellant was attempting to sue the former Attorney General in his official capacity, the action is barred by sovereign immunity").

Neither the DJA nor the federal question statute under 28 U.S.C. § 1331 supplies an independent source of federal jurisdiction.  *See Schilling v. Rogers*, 363 U.S. 666, 678 (1960); *C & E Servs., Inc. of Washington v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002).  "To consider a claim under the DJA, a federal court must have jurisdiction under another federal statute." *Beshir v. Holder*, 10 F. Supp. 3d 165, 171 (D.D.C. 2014).  Similarly, the federal question statute vests federal courts with subject-matter jurisdiction only in cases "arising under" some other source of federal law. *See id*.; 28 U.S.C. § 1331.  Section 1331, which establishes this Court's jurisdiction over federal questions, does not provide a waiver of sovereign

immunity.  *See Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (holding that 28 U.S.C. §

1331 does not constitute a waiver of sovereign immunity).

Accordingly, because neither the DJA not the Section 1331, which are all that Plaintiff

cites for jurisdiction, constitute waivers of sovereign immunity, subject matter jurisdiction is

lacking to hear this action.  *Nycal Offshore Dev. Corp. v. Haaland*, 2021 U.S. Dist. Lexis 243332

**11-13 (D.D.C. 2021) (concluding that subject matter jurisdiction was lacking under the DJA

and federal question statute, but finding it under the Administrative Procedure Act ("APA")) *see

also Lovitky v. Trump*, 949 F.3d 753, 758-59 (D.C. Cir. 2020) (concluding that subject matter

jurisdiction was lacking under both the APA and Section 1331).  The APA only permits review

of agency action "for which there is no other adequate remedy in a court [.]"  *Id*. 5 U.S.C. § 704;

*see also Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726,

731 (D.C. Cir. 2003) ("If there was no final agency action here, there is no doubt that appellant

would lack a cause of action under the APA.").  A final agency action "(1) marks the

consummation of the agency's decision making process – it must not be of a merely tentative or

interlocutory nature; and (2) the action must be one which rights or obligations have been

determined or from which legal consequences will flow." *Domestic Sec., Inc. v. SEC*, 333 F.3d

239, 246 (D.C. Cir. 2003); *see also Bennett v. Spear*, 520 U.S. 154, 178 (1997); *DTCC Data

Repository (U.S.) LLC v. U.S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 15

(D.D.C. 2014); *Assoc. of Admin. Law Judges v. U.S. Office of Personnel Mgmt*., 640 F. Supp. 2d

66, 72 (D.D.C. 2009).  In sum, "if there is no final agency action, there is no basis of review of

the government's decision."  *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).

Here, there is no final agency action that could form the basis of review under the APA.

All of the actions that Plaintiff alleges in his complaint are either moot as this Court recognized

in *Mahoney III* or not final agency actions.  It appears that Plaintiff is in discussions with the

Board about three "future" events, but there has not yet been any final agency action.  *See*

*generally* 2d Grossi Decl. at 7 ¶¶ 30(a)-30(c).  In fact, it further appears that Plaintiff has

brushed off the Agency's outreach to get a better understanding of his plans.  *Id*.  Without a final

agency action to be judicially reviewed, the APA cannot be a basis of jurisdiction.  Finally, the

APA does not apply to the Board in any event because, within the APA, "agency" "does not

include Congress."  5 U.S.C. 701(b)(1)(A).  The D.C. Circuit has interpreted the APA exemption

for "the Congress" to mean the entire legislative branch.  *Washington Legal Foundation v. U.S.*

*Sentencing Commission*, 17 F.3d 1446, 1449 (D.C. Cir. 1994).

    b.    **Plaintiff's Claims are Non-Justiciable**

        Relatedly, Plaintiff's claims are non-justiciable because his claims are not ripe or

concrete enough for judicial review.  The gravamen of Plaintiff's claims appears to be either that

he was denied permits for vigils that have already passed and are now moot; or will be denied

permits that have not yet been adjudicated primarily because Plaintiff has not been responsive to

the Board's inquiries.[6]  Plaintiff's complaint is replete with references to future events and

expectations.  For example, he alleges that he "desires to hold additional demonstration activity

of a similar nature and character as his proposed 2023 *Dobbs* event involving 250 participants on

the West Front Law on or about June 24th of every year for the foreseeable future."  TAC at 27

¶ 90.  Plaintiff makes many similar references to aspirations for events, but he does not allege a

single denial under the current governing July 2022 regulations.

_____

        [6]    A determination that a claim is moot means that "the court lacks jurisdiction to
entertain the claim, and must dismiss it."  *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103
(D.D.C. 2016) (quoting *Worth v. Jackson*, 451 F.3d 854, 855 (D.C. Cir. 2006)).

Motions to dismiss on ripeness grounds consistently proceed under Rule 12(b)(1) because "[t]he question of ripeness goes to . . . subject matter jurisdiction." *Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007) (quoting *Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n.2, (D.C. Cir. 1976)); *see also Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005).  To present a justiciable case or controversy, the party invoking federal jurisdiction must demonstrate standing and ripeness, among other requirements.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1289 (D.C. Cir. 2007).

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies.  *See* U.S. CONST. ART. III, § 2, cl. 1.  The case-or-controversy requirement reflects the "common understanding of what it takes to make a justiciable case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  Among the various doctrines developed by the courts to test the fitness of controversies for judicial resolution is the ripeness doctrine.  *See Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48-49 (D.C. Cir. 1999).  The ripeness doctrine asks "whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties."  5 FED. PRAC. 3d § 101.70[2].  Reflecting both constitutional and prudential considerations, the doctrine "is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733, (1998) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993) (stating that "[the] ripeness doctrine is

drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction").

A ripeness determination requires the Court to apply a two-part analysis: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003)). An underlying purpose of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id*. (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Ripeness also prevents a court from making a decision unless it absolutely has to, underpinned by the idea that if the court does not decide the claim now, it may never have to. *Id*.

"[T]he fitness analysis requires the court to consider both whether the context in which the issue is presented is sufficiently concrete and conducive to judicial determination, and whether deciding the issue now would violate principles of judicial restraint and efficiency." *Alcoa Power Generating Inc. v. FERC*, 643 F.3d 963, 968 (D.C. Cir. 2011). "'Among other things, the fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final.'" *La. Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 397 (D.C. Cir. 2008) (quoting *Atl. States Legal Found., Inc. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)).

The considerations undergirding the ripeness (and standing) doctrines cry out for the Court to exercise judicial restraint and allow the Board to decide Plaintiff's permit applications

14

first, to the extent that Plaintiff actually wants them decided by the Board.  Plaintiff's claims are

not sufficiently concrete or conducive for adjudication and, based on the Grossi Decl., he does

not appear to be motivated to move the applications alone early enough to avoid having to file

repeated motions seeking injunctive relief.  "A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all."

*Texas v. United States*, 523 U.S. 296, 300 (1998).  Plaintiff's Complaint is made up of

allegations that have been rendered moot or allegations regarding his desire to conduct events for

the "foreseeable future."  Therefore, his claims fail the fitness test and are not ripe.  *See Gon v.*

*Gonzales*, 534 F. Supp. 2d 118, 120-21 (D.D.C. 2008) ("Gon's speculation about a future

extradition or deportation is contingent on multiple future events which may not occur" make his

claim not ripe); *see also Mylan Pharms. v. United States FDA*, 789 F. Supp. 2d 1, 12 (D.D.C.

2011) ("This Court should not prematurely intrude in that process, but rather afford the agency . .

. the opportunity to apply its expertise.").  Nor does there appear to be hardship to the Plaintiff if

the Court exercises restraint because Plaintiff does not appear to be diligently pursuing his

current applications.  Thus, Plaintiff's claims are not ripe.

      **c.**      **Law of the Case Doctrine bars Claims Adjudicated in *Mahoney I***

      Plaintiff purports to resurrect claims that the Court already adjudicated in *Mahoney I* and

the Law of the Case doctrine would bar those claims.  In *Mahoney I*, the Court "jettisoned

Mahoney's [facial] free-speech claim . . . his claim under the Free Exercise Clause, his challenge

pursuant to [RFRA], and his due-process cause of action."  *Mahoney III* at 2 (citing *Mahoney I* at

10-14).  After Plaintiff moved for reconsideration, the Court "reinstate[d] Plaintiff's free-speech

count only insofar as it alleges that the restrictions involving the so-called no-demonstration zone

are facially unconstitutional."  *Id*. at 12.  Therefore, the only claims remaining in this action that

are not barred by the Law of the Case doctrine are Plaintiff's "as applied" facial challenge to the

"no-demonstration zone," and his freedom of assembly claim which the parties previously

agreed "should rise and fall" with his "as applied" challenge.  *See Mahoney I* at 22 ("What *is*

clear at this stage is that all agree, in reliance on the same authority, *Christian Legal Society*

*Chapter of the University of California v. Martinez*, 561 U.S. 661 (2010), that the free-assembly

claim should rise and fall with Mahoney's as-applied free-speech challenge [emphasis in

original].").

 "The law-of-the-case doctrine dictates that the same issue presented a second time in the

same case in the same court should lead to the same result," absent extraordinary circumstances.

*Al Bahlul v. United States*, 967 F.3d 858, 875 (D.C. Cir. 2020); *Arizona v. California*, 460 U.S.

605, 618 (1983) (Under the so-called "law of the case" doctrine, "when a court decides upon a

rule of law, that decision should continue to govern the same issues in subsequent stages in the

same case."); *see also LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996).  "[W]hile the

law of the case doctrine does not necessarily apply to interlocutory orders, district courts

generally consider the doctrine's underlying rationale when deciding whether to reconsider an

earlier decision."  *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 328 (D.C. Cir. 2007).

The underlying rationale is that "where litigants have once battled for the Court's decision, they

should neither be required, nor without good reason permitted, to battle for it again."  *Lemmons*

*v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 22 (D.D.C. 2007).

 "Rather than a mandatory on/off switch, the law of the case doctrine is a prudential bar

that directs a court not to alter a previous judicial determination unless unusual circumstances are

present."  *United States v. Eilberg*, 553 F. Supp. 1, 3 (D.D.C. 1981)). The burden to depart from

the mandates of the law of the case doctrine is significant.  *See United States v. Trabelsi*, 8 F.4th

1291 (D.C. Cir. 2022).  Here, Plaintiff's TAC appears to be an attempt to circumvent the Court's

denial, in part, of his motion for reconsideration.  Otherwise, this would be Plaintiff's third (or

fourth) bite at the apple given that these specific claims were dismissed and reconsideration was

denied.  Plaintiff should not be able to get around the Court's ruling by merely amending his

complaint.  In *Inova Health Care Servs. v. Omni Shoreham Corp.*, 2021 U.S. Dist. Lexis 71832

(D.D.C. 2021), this Court used the Law of the Case doctrine to deny a subsequent motion to

dismiss that presented nothing new compared to the one that had previously been denied.  The

Court can use the doctrine prudentially to prevent Plaintiff from recycling claims that have

already been considered and adjudicated.  Thus, the Court should not permit Plaintiff to

repackage any claim other than those allowed to proceed after *Mahoney III*.

### d.   Plaintiff's "as applied" Claim Fails Because Congresspersons are not Comparators

Plaintiff's "as applied" claim fails because, as the Grossi Declarations make clear, by

statute and "intuitively," the traffic regulations do not apply to Congresspersons.  The claim

survived Defendant's motion to dismiss because, "[w]hile the Court could previously consider

such information, at the motion-to-dismiss stage it may weigh only 'the facts alleged in the

complaint'" and documents incorporated therein."  *Mahoney I* at 19.  The Court added that

because "Defendants provide[d] no source other than Grossi's disputed declaration . . . it would

thus be improper to take judicial notice of such information."  *Id*.  Because Defendants now

move for summary judgment, in the alternative, the Court is permitted to take the declarations of

Mr. Grossi into account and any other matters about which the Court may take judicial notice.

The authorities in this Circuit also "fortify [] the intuitive notion that there are legitimate reasons

to view Members as different in relevant ways when enforcing the regulations concerning

demonstrations at the Capitol."  *Mahoney II* at 10.

Because the Court can properly consider both Grossi Declarations *and* take judicial notice of publicly available information, it can avoid the spiral where it would deny Plaintiff's motions for injunctive relief but be unable to dismiss Plaintiff's "as applied" claims. The thin thread that Plaintiff's "as applied" claim hangs is the previous inability to consider the Grossi Declaration and take judicial notice of public sources. See, e.g., *Wilson v. Wolf*, Civ. A. No. 20-0100 (ABJ), 2021 WL 230136, at *4 (D.D.C. Jan. 22, 2021) ("In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'") (citing, among others, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

Courts in this Circuit "may take judicial notice of the existence of newspaper articles in the Washington, D.C., area that publicized the ongoing criminal investigation of the Barry case, and McWilliams' involvement and cooperation in that investigation." *See* Fed. R. Evid. 201(c); *Agee v. Muskie*, 629 F.2d 80, 81 n.1, 90 (D.C. Cir. 1980) (taking judicial notice of facts generally known as a result of newspaper articles). Thus, the Court can take judicial notice of the fact that, as Plaintiff appears to concede, one of the comparator events was sponsored or attended by Congresswoman Cori Bush. *See* TAC at 14 ¶ 41; *see also* Cori Bush slept outside the Capitol to protest evictions, https://www.washingtonpost.com/nation/2021/08/04/cori-bush-eviction-moratorium/ (visited December 20, 2022); Grossi Decl. at 3 ¶ 23 ("During this event it is my understanding that Member Bush and other Members of Congress were present during the demonstrations, which lasted overnight. When the attendance of these Members ceased, the remaining demonstrators were told they were in violation of the demonstration rules and given appropriate warnings."); CPAC Cuba Libre | CPAC - American Conservative

Unionhttps://www.conservative.org/cuba-libre/ (visited December 20, 2022).  The foregoing

constitute "source[s] other than Grossi's disputed declaration" that establish that the alleged

comparator events were attended or sponsored by Congresspersons.  Accordingly, Plaintiff's "as

applied" claim fails.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court should grant this motion and dismiss the Third

Amended Complaint pursuant to Rule 12(b)(6) or alternatively Rule 56.

Dated:  December 21, 2022                    Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

_____/s/_____
KENNETH ADEBONOJO
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia (Civil Division)
601 D Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2562

*Counsel for Defendants*